(100 South. 557)

**INGRAM et al. v. WATSON.** (7 Div. 461.)

(Supreme Court of Alabama. May 11, 1924. Rehearing Denied June 5, 1924.)

**1. Names ⬤⟞18—Evidence held competent to show name under which mortgagor dealt was his true name.**

In action by mortgagee to recover mortgaged property of a subsequent mortgagee who had dealt with mortgagor under a different name, testimony by plaintiff that he did not know mortgagor by any other than name under which he dealt with him, and that mortgagor had said that was all the name he had, *held* competent as tending to show such name was mortgagor's true name.

**2. Names ⬤⟞17—Person may adopt any name he pleases.**

A person may adopt any name he pleases, and transact business and sue and be sued thereunder.

**3. Names ⬤⟞18—Proof that mortgagor was known and conducted business by name under which mortgage given held relevant and competent.**

In action by mortgagee to recover mortgaged property of subsequent mortgagee who had dealt with mortgagor by different name than that under which first mortgage was given, it was competent for plaintiff to prove that mortgagor had been called by name under which he dealt with him since childhood, transacted business, kept bank account, prosecuted suit, and similar matters, under that name.

**4. Names ⬤⟞18—Evidence showing use of mortgagor's name under which mortgage was given held properly excluded.**

In action by mortgagee to recover mortgaged property of subsequent mortgagee who had dealt with mortgagor under a name different than that used in first mortgage, record showing issuance of marriage license under name used in subsequent mortgage, and use of that name in summons and complaint in another action, and assessment of property in that name, *held* properly excluded.

**5. Chattel mortgages ⬤⟞150(1)—Recording of mortgage given under name other than mortgagor's own not notice to subsequent mortgagees.**

Under Code 1907, § 3373, the recordation of a mortgage given under a name other than mortgagor's real name is not constructive notice to a subsequent mortgagee of same property.

**6. Evidence ⬤⟞109—General knowledge of fact may be proved as tending to establish knowledge by particular persons.**

General knowledge of a fact in a community may be proved as tending to show knowledge of that fact by particular persons.

**7. Chattel mortgages ⬤⟞157(3)—Whether name in mortgage was mortgagor's own, and whether he was so generally known, held for jury.**

Whether real name of mortgagor was that under which he executed first of two mortgages, and whether he was generally known in the

---

community by that name, so as to constitute notice of such fact to second mortgagee, *held*, under evidence, for jury.

**8. Chattel mortgages ⚖️150(1)—Instruction as to effect of recordation of mortgage under name other than mortgagor's own held proper.**

In mortgagee's action to recover mortgaged property from subsequent mortgagee who had dealt with mortgagor under different name, instructions that, if mortgagor's use of name used in first mortgage was of sufficient notoriety as to reasonably put defendant on notice that such name designated same person, the recording of plaintiff's mortgage would constitute constructive notice to defendant of it, *held* proper.

**9. Chattel mortgages ⚖️150(1)—Instruction as to effect of use by mortgagor of name not his own held proper.**

In mortgagee's action to recover mortgaged property of subsequent mortgagee who had dealt with mortgagor under different name, instruction that, if mortgagor's use of name in first mortgage was of such general notoriety as to put reasonable man on inquiry which would disclose fact of identity, defendant was not entitled to recover, *held* proper.

**10. Chattel mortgages ⚖️150(1)—Instruction as to mortgagor's use of name not his own as constituting notice to subsequent mortgagee held proper.**

Instruction that it was immaterial whether name used by mortgagor was his own, if such use had gained sufficient notoriety to reasonably put a subsequent mortgagee of same property on notice when dealing with mortgagor under a different name, *held* proper.

**11. Chattel mortgages ⚖️150(1)—Instruction as to effect of recording mortgage under nickname held proper.**

Instruction that nickname may acquire such notoriety as to take the place of the real or given name of a mortgagor, as affects the notice arising from the recording of a mortgage given under that name, *held* proper.

**12. Chattel mortgages ⚖️150(1)—Instruction as to rights of mortgagee dealing with mortgagor under name different than used in prior mortgage, held properly refused.**

In action by mortgagee to recover mortgaged property of subsequent mortgagee who dealt with mortgagor under different name, instructions that, if name used in first mortgage was not mortgagor's own, and defendants dealt with him in good faith without knowledge of his use of such name, verdict should be for them, and that they were under no obligation to go without community where mortgagor lived to ascertain his name, *held* properly denied.

**13. Chattel mortgages ⚖️150(1)—Instruction as to effect of recording of mortgage given under name other than mortgagor's own held properly denied.**

Instruction that recording of mortgage given in name other than mortgagor's own would not be notice to subsequent mortgagees dealing with mortgagor under his own name and without knowledge of his use of other name *held* properly denied.

**14. Trial ⚖️295(5)—Instruction as to notice from recordation of mortgage given under name by which mortgagor generally known held not erroneous.**

In mortgagee's action to recover mortgaged property of subsequent mortgagee who dealt with mortgagor under different name, instruction that, if mortgagor was generally known in community by name used in first mortgage which had been recorded, then defendant would be put on notice, although name given him by mortgagor was different, and that if mortgagor was so generally known plaintiff would be entitled to recover, *held* not erroneous when considered with entire charge.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Action in detinue by V. H. Watson against S. P. Ingram and A. W. Bell, doing business as Ingram & Co. Judgment for plaintiff, and defendants appeal. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The following charges were given at plaintiff's request:

"(1) If it appears from all the evidence to the reasonable satisfaction of the jury that the fact of Doll Bell's name being used generally in the community in which he lived, and in business transactions in which he engaged, and in the public records of the county, in mortgages in the probate office of the county, and in suits in the courts of the county, was of sufficient notoriety in the county as to reasonably put the defendant on notice, in connection with all the other evidence, that Doll Bell and Rufus Bell were one and the same person, then the recording of the plaintiff's mortgage from Doll Bell would be held to be notice to defendant.

"(2) The court charges the jury that, if they find from all the evidence that the name of the person making the mortgages involved in this case to the plaintiff and to the defendant was generally known to be Doll Bell in the community in which he lived, and that this fact was of such general notoriety as to put a reasonable man upon inquiry in taking a mortgage from him, which inquiry, if followed up, would be reasonably expected to lead to knowledge of the fact that Doll Bell and Rufus Bell were one and the same person, then the defendant is not entitled to recover in this case.

"(3) It is immaterial in this case whether the name 'Doll Bell' is a nickname or a given name, if the use of it had acquired such general notoriety in the county where the mortgages were recorded as to reasonably put the defendant on notice that this was the same person as the mortgagor in the defendant's mortgage.

"(4) For the purpose of deciding the effect of notice by the recording of a mortgage a nickname of the mortgagor may acquire such notoriety as to take the place of the real or given name of a mortgagor.

"(5) In deciding whether the mortgage of Doll Bell to the plaintiff is notice to the defendant of plaintiff's title to the cotton, the jury may consider by which of the names used by the mortgagor he was most generally known,

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and, if the jury find that the use of the name Doll Bell in the county where the mortgage was recorded was of such notoriety as to reasonably put defendant on notice of the fact that Doll Bell and Rufus Bell were one and the same person, then the defendant is held to notice of the priority of plaintiff's mortgage."

These charges were refused to the defendants:

"(2) Even though the jury find that the mortgagor was called Doll Bell, yet if that was not his true name, but his true name was Rufus Bell, and the defendants did not know that he was called Doll Bell, and dealt with him in good faith under his true name, then your verdict should be for the defendants.

"(3) The court charges the jury that the record of a mortgage in the name of Doll Bell would not be notice of a mortgage executed by Rufus Bell, unless the party taking the mortgage from Rufus Bell knew that Doll Bell was the same person as Rufus Bell, and if the defendants did not know that Rufus Bell was the same person as Doll Bell then your verdict should be for the defendants.

"(4) The court charges the jury that the defendants were under no duty, when the negro Bell traded with them, to go outside into the community where the negro lived to ascertain what his name was or what he was called; and if the defendants dealt with the negro in his true name in good faith, and without any knowledge that he was called Doll Bell, then your verdict should be for the defendants."

The portion of the oral charge excepted to by defendants is as follows:

"Now the issue in this case is whether or not he was generally known in the neighborhood in which he lived by the name of Doll Bell. If he was generally known in the neighborhood in which he lived by the name of Doll Bell, then Mr. Ingram would be put on notice that he had given a prior mortgage, although his name given to him at the time might have been Rufus Bell. If he was generally known by the name of Doll Bell and not generally known by the name of Rufus Bell, then the plaintiff would be entitled to recover in this case."

Hugh Walker, of Anniston, for appellants.

The record of a mortgage executed in the name of Doll Bell would not be notice that the mortgage was executed by Rufus Bell. Johnson v. Wilson, 137 Ala. 468, 34 South. 392, 97 Am. St. Rep. 52; Bank v. Hacoda, 169 Ala. 476, 53 South. 802, 32 L. R. A. (N. S.) 243, Ann. Cas. 1912B, 599; Grimmer v. Nolen, 146 Ala. 466, 40 South. 97.

Lapsley & Carr, of Anniston, for appellee.

It is sufficient in legal proceedings that a person is designated by a name by which he is commonly known and called, even though it is not his true name. Washington v. State, 68 Ala. 85; Noble v. State, 139 Ala. 90, 36 South. 19; Laflin v. Steytler, 146 Pa. 434, 23 Atl. 215, 14 L. R. A. 690; Miller v. George, 30 S. C. 526, 9 S. E. 659; Loser v. Bank, 149 Iowa, 672, 128 N. W. 1101, 31 L. R. A. (N. S.) 1112. Proof of general notoriety is generally admissible as tending to prove notice of a fact. Hodges Bros. v. Coleman, 76 Ala. 103. Whatever is sufficient to put a party on inquiry is enough to charge him with notice. Cole v. B. U. Ry., 143 Ala. 427, 39 South. 403; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 South. 190; Dixie Grain Co. v. Quinn, 181 Ala. 208, 61 South 886.

MILLER, J. This is a detinue suit by V. H. Watson against Ingram & Co., a partnership composed of S. P. Ingram and A. W. Bell, for a bale of cotton, weighing 415 pounds, gin mark D. B., warehouse No. 42024. The defendants pleaded general issue; jury returned a verdict in favor of the plaintiff, and from a judgment thereon by the court, this appeal is prosecuted by the defendants.

The plaintiff and defendants claim title to the bale of cotton by separate mortgages both given by the same mortgagor, but under different names. Doll Bell and his wife executed to plaintiff a mortgage on his cotton crop for the year 1922 on March 10, 1922, and it was duly filed for record on March 13, 1922, and recorded March 14, 1922, in the probate office of Calhoun county, the county in which the cotton was raised by the mortgagor. Rufus Bell executed a mortgage to the defendants on two mules, a horse, cows, and the cotton crop of 1922 on March 27, 1922, and it was duly filed for record and recorded in that probate office on March 28, 1922. It is not disputed that the mortgagor, Doll Bell, in plaintiff's mortgage is the same person as Rufus Bell, the mortgagor in defendants' mortgage. Both mortgages are unpaid, and the cotton was raised by the mortgagor in 1922.

[1] The plaintiff testified:

"I took this [his] mortgage from Doll Bell. I know him and have known him for about three years. I didn't know him by any other name than Doll Bell."

Plaintiff also stated that at the time this mortgage was made he "asked him [Bell] was Doll all the name he had, and he said it was. He said, 'That will do; Doll Bell.'" This was competent evidence. It tended to show his true name was Doll Bell. Ozark, etc., Bank v. P. & M. Bank, 197 Ala. 427, 73 South. 72. He stated the first time he heard of the name of Rufus Bell was after the cotton was ginned and this controversy arose over it; then he heard that his true name was Rufus Bell.

On March 27, 1922, the defendants sold the mortgagor two mules for $450, payable $25 cash, $25 April 4, $50 June 1st, and the balance October 1, 1922, and Rufus Bell executed the mortgage to them, to secure the note for the above amounts on the property hereinbefore mentioned. S. P. Ingram, one of the defendants, testified:

"I know this negro they call Rufus Bell. The first time I ever saw him was on the 27th of March, 1922. That is the day the paper I hold in my hand was executed. He told me at that time that his name was Rufus Bell. He told me where he lived. That was the first time that I ever knew him in any way. I sold him some stock that day, and that stock is described in this mortgage."

He stated he had been selling mules in Anniston for some 20-odd years constantly, and advancing to white people and a great many negroes. He further testified:

"At the time I sold these mules to this negro all that I knew about where he lived was what he told me. I asked him where he lived, and he told me between Chocolooco and White Plains, on Mr. Charlie Borders' place. I made no particular inquiries as to him of people that knew him."

There was evidence that the full, real name of the mortgagor is Weightman Tell Rufus Bell. His Christian name by which he was intended to be called by his parents is Rufus, and while a small child he was nicknamed "Doll," and he has been called and known ever since by the name of Doll Bell. The bale of cotton in controversy, when seized, had the initials "D. B." on it, placed there by the ginner.

[2] In Milbra v. S. S. S. & I. Co., 182 Ala. 630, 62 South. 179, 46 L. R. A. (N. S.) 274, this court wrote:

"A person may adopt what name he pleases, and if he deals with others, or goes to court in a name, no matter what, no harm is done."

In 29 Cyc. p. 270, we find this general text:

"Without abandoning his real name a person may adopt any name, style or signature wholly different from his own name by which he may transact business, execute contracts, issue negotiable paper and sue and be sued."

This is supported by Carlisle v. People's Bank, 122 Ala. 446, 26 South. 115.

[3] Hence it was relevant and competent for the plaintiff to introduce evidence proving or tending to prove that this mortgagor assumed and adopted the name—the nickname—Doll Bell; that he had been known and called by it since childhood, transacted all of his business in that name, signed mortgages in that name, was called and known in the community where he lived and whenever he did business by Doll Bell, and prosecuted a suit in that name in the court in Anniston. There was evidence that prior to this transaction he had executed many mortgages in different years, and he signed them Doll Bell, and they were recorded in Anniston in the probate office, where the mortgage of the defendant was executed. This was relevant evidence. It tended to show he had adopted that name, and was generally known by it.

The mortgagor testified:

"I suppose that mortgage I made to Ingram & Co. in March, 1922, is the first mortgage for public record I signed Rufus."

It was also competent to prove that he kept an account in the bank in Anniston and other places in the name of Doll Bell, signed and indorsed checks in the name of Doll Bell for some time before the mortgage was executed to the defendants.

The defendants did business in Anniston for 20 years, within 8 miles of where the mortgagor resided since a child. Some of the witnesses testified they had known Bell, the mortgagor, by the name of Doll Bell all of his life, and never heard of the name of Rufus Bell until after this suit was commenced. It was competent evidence, as it tended to show he had been known generally and for a long time by that name.

[4] The defendants offered in evidence the record of marriages showing a license was issued to W. T. R. Bell, the summons and complaint of the Anniston National Bank versus W. T. R. Bell, the tax record showing property assessed in the name of W. T. R. Bell. The court sustained objection to this record evidence, and properly so; it did not tend to show that the mortgagor's name was Doll Bell or Rufus Bell, or that he was or was not generally known and called Doll Bell.

Section 3373 of the Code of 1907 reads as follows:

"The recording in the proper office of any conveyance of property which may be legally admitted to record, operates as a notice of the contents of such conveyance, without any acknowledgment or probate thereof as required by law."

The plaintiff complied with this statute, filed and had recorded its mortgage prior to the execution and recordation of the mortgage of the defendants, but the mortgagor, Bell, signed the mortgage to plaintiff in the name of Doll Bell, and signed the mortgage to the defendants in the name of Rufus Bell. The defendants claim the name of Doll Bell is an assumed or nick name, and that they are bona fide mortgagees of the cotton from the mortgagor, and that his true name is Rufus Bell, and the true name was signed to their mortgage, and they had no actual or constructive notice prior to or at the time of the execution of their mortgage that Doll Bell, an assumed or nick name, signed to plaintiff's mortgage, was Rufus Bell, and that the mortgagor in each mortgage was one and the same person.

[5] There is some evidence, though slight, indicating Bell's true and only name is Doll Bell. If Bell's true name is Doll Bell, and not Rufus Bell, then the recordation of plaintiff's mortgage, signed by the name of Doll Bell, would be constructive notice of its contents to the defendants, and they would not be innocent mortgagees by and

under their subsequent mortgage signed by Rufus Bell. Ozark, etc., v. P. & M. Bank, 197 Ala. 427, 73 South. 72; First Nat. Bank v. Hacoda, 169 Ala. 476, 53 South. 802, 32 L. R. A. (N. S.) 243, Ann. Cas. 1912B, 599. But if Bell's true name is Rufus Bell, and his assumed or nick name is Doll Bell, then the recordation of the defendants' mortgage signed and given by Doll Bell would not be constructive notice of its contents to the defendants, and have priority over their subsequent mortgage given and signed by Bell in his true name, Rufus Bell, unless the defendants or either of them before or at the time of the execution of their mortgage by Rufus Bell knew of the circumstances and opportunities surrounding them at the time and prior thereto put them on notice that Doll Bell and Rufus Bell were one and the same person. Johnson v. Wilson, 137 Ala. 468, 34 South. 392, 97 Am. St. Rep. 52; Grimmer v. Nolen, 146 Ala. 466, 40 South. 97; First Nat. Bk. v. Farmers' Bk. of Luverne, 207 Ala. 402, 92 South. 639, and authorities supra.

[6] In Hodges Bros. v. Coleman & Carroll, 76 Ala. 114, this court wrote:

"General knowledge of a fact in a community may be proved, as evidence tending to trace notice of such fact, its existence being otherwise shown."

In discussing this principle this court in Stallings v. State, 33 Ala. 427, wrote:

"In several cases decided in this court, it is held, that where a witness has been so situated that, if a fact, notorious and ostensible in its character, ever existed, he would probably have known it, his want of knowledge is some evidence, though slight, that it did not exist. Thomas v. Degraffenreid, 17 Ala. 602; Nelson v. Iverson, 24 Ala. 9, 60 Am. Dec. 442; Blakey's Heirs v. Blakey's Ex'x, at this term (33 Ala. 611). It is obvious, that the principle on which these decisions rest is, that if the existence of a fact is shown, and it is also proved that a party was in a situation and had opportunities to know of it, this is evidence tending to prove that he did know of it. The rule is, that evidence having any tendency, however slight, to prove a particular fact, is competent to be submitted to the jury to show that fact. Eaton v. Welton, 32 N. H. 352."

In Ward v. Herndon, 5 Port. 382, writing on this subject, the court stated:

"Whenever it becomes necessary to trace the notice of a fact to any one, it is not, in general, necessary to do this by direct and positive proof, but it is competent to show such a state of circumstances, as negative the absence of notice. And as no man is presumed to be so much of a recluse as not to know what is generally known and talked of in his neighborhood —where positive proof cannot be had of such knowledge, it is competent to prove a circumstance, from which it is inferrable."

See, also, Jones v. Hatchett, 14 Ala. 743.

[7] There was slight evidence tending to show Bell's true name was Doll Bell; there is much evidence that his true name was Rufus Bell; it is undisputed that he was known, called, and transacted business in the name of Doll Bell; and there is positive evidence that the defendants did not know when their mortgage was taken that Bell had or was known by any other name than Rufus Bell. There was evidence tending to show Bell was generally known and called from childhood by the name of Doll Bell; and, from the circumstances surrounding the defendants at the time of the execution of their mortgage, and from their situation and from their opportunities to know it, as disclosed by the testimony, the jury could reasonably infer and decide from all the evidence that they did actually or constructively know before or at the time of the execution of their mortgage that Rufus Bell was known and called Doll Bell, and that he was the same person as Rufus Bell. These were questions for the jury to decide from the conflicting evidence, and its reasonable tendencies; and the general affirmative charge, with hypothesis, requested by defendants in their favor, was properly refused by the court. Penticost v. Massey, 202 Ala. 681, h. n. 2, 81 South. 637; Ozark City Bank v. P. & M. Bank, 197 Ala. 427, 73 South. 72; First Nat. Bank v. Farmers' Bank of Luverne, 207 Ala. 402, 92 South. 639.

[8-13] It results from the foregoing statement of the law and quotations from authorities that the court properly gave written charges numbered 1, 2, 3, 4, and 5, requested by plaintiff, and properly refused written charges numbered 2, 3, and 4, requested by the defendants.

[14] That part of the oral charge of the court excepted to by the defendants, when considered in connection with the entire oral charge, was free from reversible error, and in harmony with the principles of law applicable to the testimony of the case as herein declared.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS, J., concur in the opinion and result.

SOMERVILLE and BOULDIN, JJ., concur specially as shown below in their opinion.

SAYRE and GARDNER, JJ., concur in opinion as to the law, but hold that that part of the oral charge excepted to was reversible error.

BOULDIN, J. (specially concurring). My view is that a mortgage given and subscribed in the name by which the mortgagor is generally known and dealt with among those who know and deal with him is a valid mortgage. The record thereof is constructive

notice to all subsequent mortgagees. The real name by which he is known is his legal name in dealing with the question before us. I do not think the question of implied notice in fact to the second mortgagee is of importance. The oral charge, in my opinion, correctly stated the law.

SOMERVILLE, J., concurs in the opinion of BOULDIN, J.