173 So. 38

### ROBERTS v. GRAYSON et al.
### 8 Div. 763.

Supreme Court of Alabama.

Feb. 18, 1937.

Rehearing Denied March 18, 1937.

Watts & White, of Huntsville, for appellant.

David A. Grayson, Cooper & Cooper, and Taylor, Richardson & Sparkman, all of Huntsville, for appellees.

GARDNER, Justice.

Following the ruling here on demurrer to the original bill (Grayson v. Roberts, 229 Ala. 245, 156 So. 552), complainant filed an amended or substituted bill seeking only the sale of real estate for the payment of the debts of the estate of Hattie W. Jones, deceased—the sufficiency of which amended bill is not here questioned. The cause proceeded to trial on such bill, answer thereto, and proof as noted, resulting in a denial of the relief sought and dismissal of the bill.

There is here presented and argued but a single question of law, the facts being without dispute. That question relates to the claim of Caldwell, Laughlin, and McKissick, physicians and surgeons, for medical and surgical services rendered deceased through a long period of time, the correctness of which, as to amount, is not questioned. The objections to the validity of this claim as a proper charge against

the estate are twofold, each of which has reference to our statute of nonclaim. Sections 5814 and 5818, Code 1923.

First, it is insisted the prepared itemized claim and verification relates to the estate of Mrs. J. C. Jones and not that of Hattie W. Jones, and reliance is had in the main upon Beene's Adm'r v. Collenberger, 38 Ala. 647, and Halfman's Ex'x v. Ellison & Son, 51 Ala. 543. These authorities have been read with care, but we think they are readily distinguishable on the facts, and a discussion of the points of differentiation need not be here entered into.

■ Here the proof discloses that Mrs. J. C. Jones and Hattie W. Jones were the same person, decedent being the widow of J. C. Jones, who had been dead a number of years. Admittedly, in a strict sense, decedent's name was not Mrs. J. C. Jones, as a married woman takes her husband's surname, with which is used her own given name: or, to state it differently, a married woman's name consists, in law, of her own Christian name and her husband's surname. 45 Corpus Juris, 369; note to Brown v. Reinke, 35 A.L.R. 413. But the Nebraska Supreme Court has, in Carroll v. State, 53 Neb. 431, 73 N.W. 939, 940, taken a very practical and common sense view of this question in the following language, which meets with our approval: "It is argued that 'Mrs. Fred Steinburg' was not the name of the witness, and this, being the name written on the instrument, was insufficient,—did not fulfill the requirements of the law. It must be said that, in a strict sense or meaning, this was not the name of the witness. A married woman takes her husband's surname, and by a social custom, which so largely prevails that it may be called a general one, she is designated by the use of the Christian name, or names, if he has more than one, of the husband, or the initial letter or letters of such Christian name or names of the husband, together with the appellative abbreviation 'Mrs.' prefixed to the surname; and all married women (there may be, possibly, a few exceptions) are better known by such name than their own Christian name or names, used with their husband's surname, and their identification would be more perfect and complete by the use of the former method than the latter. That knowledge of the identity of the witnesses to be produced against him

be conveyed to the accused person is the main object to be accomplished by the indorsement of the names of witnesses on the information This is the aim and purpose of the law by which such act is required."

■ Illustrative also is the question of suit and service of process. By the weight of authority, so long as the defendant can be identified as the one against whom the 'judgment was rendered, he is as much bound by the judgment as if served in his right name, it appearing he was duly served and failed to appear and plead in abatement, but suffered judgment by default. 21 R.C.L. 1325. Though it is well settled that creditors or any other person interested in the distribution of the estate have an equal right with the executor or administrator to insist on a plea of nonclaim, (McBroom v. Governor, 6 Port. 32; Fretwell v. McLemore, 52 Ala. 124, 140; Grayson v. Roberts, supra), yet the primary purpose of the statute was for the protection of the executor or administrator in the administration of the estate, and notice to him in regard thereto.

■ Perhaps this is better demonstrated by the discussion of the origin of the statute as found in Fretwell v. McLemore, 52 Ala. 124, on pages 139 and 140, which needs no repetition here. Other authorities are to the same effect. Bibb & Falkner v. Mitchell, 58 Ala. 657; Floyd v. Clayton, 67 Ala. 265; Halfman's Ex'x, v. Ellison, 51 Ala. 543; Smith v. Fellows, 58 Ala. 467; Burns v. Burns, 228 Ala. 61, 152 So. 48; First National Bank v. Love, 232 Ala. 327, 167 So. 703; Metcalf v. Payne, 214 Ala. 81, 106 So. 496. "Technical accuracy, the certainty of description essential in pleading, may not be observed, but the statement must, of itself, inform the personal representative, on an inspection of it, of the nature, character, and amount of the liability it imports, and must distinguish it with reasonable certainty from all similar claims." Floyd v. Clayton, supra.

■ Notice to the personal representative being the chief purpose of the statute, the question is whether or not the filing of this claim sufficed to meet the rule, that is, did it contain sufficient information which would stimulate inquiry and lead to a proper determination of the question of liability? As said in Floyd v. Clayton, supra: "The personal representa-

tive ought not to have looked alone to that entry. Imperfect as it is, it ought to have put him on the inquiry, and inquiry would have led him to the knowledge that the note itself was filed, and not a statement of it." It is the well-established rule that "what is sufficient to put one on his guard and call for inquiry is notice of everything to which the inquiry would lead." Home Bond & Mortgage Corp. v. Alabama Utilities Service Co., 225 Ala. 322, 323, 142 So. 827, 828.

The claim of Caldwell, Laughlin, and McKissick was duly itemized and verified, and correct in all particulars, with the exception of the name Mrs. J. C. Jones, rather than Hattie W. Jones. It was filed in the office of the probate judge and so remained on file. There was a docket entry of it made on page 72 of the record of claims, which entry reads:

"Claims against Estates.

| Estate of Mrs. J. C. Jones, Mrs. Hattie W. Jones. | Caldwell Laughlin & McKissack Account $1773.00. Filed 8-9-30. |
| Administrator Executor. | Poole's Funeral Home, Account $591.00. Filed 9-10-30." |

■ Clearly a personal representative must be wholly ignorant of the decedent and her affairs as well as her name for such an entry not to excite inquiry in regard to both claims, though the first was incorrectly designated in the initials of the given name of decedent's husband. So far as concerns this particular case, there could of course be no doubt, as the executrix was decedent's only child and sole devisee under her will. True, under our decisions, mere knowledge of the personal representative as to the claim does not suffice. There must yet be some formality of presentation. First National Bank v. Love, supra.

But the law is designed for practical purposes and looks to practical ends. If, therefore, the difference in the name as here indicated could be said to present ordinarily any matter of ambiguity or uncertainty, the courts would not be authorized to close their eyes to the fact that no such ambiguity or uncertainty could be said to exist as to an executor or administrator who appears to be well acquainted with decedent by such names, and could not, therefore, have been in any manner misled thereby. In no event, therefore, could it be held the difference in the Christian name is of any avail to these objectors.

But dealing with the question, with the matter of relationship and actual knowledge aside, we yet think the error in the strict technical name was not fatal to the validity of the claim. While the record of conveyances and constructive notice thereby may serve in part as illustrative (Halfman's Ex'x v. Ellison, supra; First National Bank v. Hacoda Mercantile Co., 169 Ala. 476, 53 So. 802), yet the statutes touching these two matters of notice are not the same, and do not embrace entirely the same purpose. In the one innocent purchasers are to be considered and protected, and in the other the statute is only concerned with notice to the personal representative who is presumed to have some cognizance of the estate and of the decedent, the purpose being that in the administration of the estate he make no error of distribution.

■ Here on the docket entry of claims in the office of the judge of probate we find that of the physicians just above that of the funeral director, both against the estate of Mrs. Jones, the only difference being the one uses the initials of the Christian name of decedent's husband, and the other more correctly uses her own Christian name. But they are one and the same person. And, as observed in Kornegay v. Mayer, 135 Ala. 141, 33 So. 36, 38, "other than by the docket entry, the statute prescribes no way to evidence the filing; but the entry furnishes evidence in a form which is permanent, and attended with at least a prima facie presumption of correctness. * * * It is presumed the probate judge did his duty in respect of docketing claims filed against this estate."

■ With this claim on file and with this docket entry, we are persuaded sufficient notice to stimulate inquiry leading to the identity of the decedent was given, and sufficient presentation made, under the principles of law above considered, and that the same is not barred by the statute of nonclaim.

The second objection to the claim requires but brief discussion. It is based upon the sole fact that on the back of the claim are the following words:
"State of Alabama,
Madison County.
Probate Court
Estate of Mrs. J. C. Jones, deceased,
Claim of C. L. & Mc.
Filed this 9 day of Aug. 1930.
Thos. W. Jones, Judge of Probate."

662

And it is insisted the words above noted, "Probate Court," on the back of the claim, destroy its effectiveness upon the theory the filing should be in the office of the probate judge, and not in the "Probate Court." That the claim was filed, however, and so remained on file in the office of the judge of probate, is not questioned, and it is marked filed by the judge of probate.

Reliance is had upon Smith v. Nixon, 205 Ala. 223, 87 So. 326, 327, in which is cited also W. L. Weller & Sons v. Rensford, 185 Ala. 333, 64 So. 366. These cases dealt with a filing of a claim in the chancery court, and the holding was there was no statutory authority therefor. In Smith v. Nixon, supra, the language of the opinion in reference to a distinction between probate court and the office of the judge of probate related to a claim filed under what is now section 5814, Code of 1923, which deals with a claim presented by the administrator in his individual capacity against himself as administrator, and the opinion specifically takes account of the "personal identity of the claimant and the representative in such cases."

No such case is here presented and, indeed, the matter of any such distinction was not in fact presented in Smith v. Nixon, supra, for the reason the claim there was one filed in the chancery court, and the opinion discloses that Weller & Son v. Rensford, supra, was decisive of that question, and determined the case.

 But we find no occasion here to enter into any such distinction. Undisputedly this claim was on file in the office of the judge of probate and its filing was marked by him as judge of probate. By what hand the words "Probate Court" were made to appear on the back of the claim the record is silent. But it is immaterial. The claim was filed by the probate judge, and it remains on file with the claim of the funeral director "in the archives of the probate judge's office," to use the language of the chief clerk as a witness. We are persuaded this objection likewise is without merit.

It results that, in our opinion, the claim of Caldwell, Laughlin, and McKissick was not barred by the statute of nonclaim; and that the decree to the contrary was laid in error.

Upon application for rehearing, our attention is directed for the first time to section 8953, Code 1923. But this is a statute of limitations only, and, in our opinion, is wholly lacking in application to the instant case.

The decree will be reversed and the cause remanded to the trial court to be proceeded with in accordance with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.