THE STATE, EX REL. BARBUTO, PROS. ATTY., *v.* OHIO
EDISON CO.

[Cite as State, ex rel. Barbuto, v. Ohio Edison Co.,
16 Ohio App. 2d 55.]

(No. 5850—Decided February 7, 1968.)

*Mr. James V. Barbuto,* prosecuting attorney, *Mr. John Smith* and *Mr. William Moore,* for relator.

*Mr. John R. White* and *Mr. Hollis P. Allan,* for respondent.

DOYLE, J. This is an action in quo warranto, commenced originally in this court by the state of Ohio, on the relation of the Prosecuting Attorney of Summit County, in which the state prays that the respondent, the Ohio Edison Company "be compelled to answer to the state authority, by what warrant it claims to use and enjoy the liberties, privileges and franchises" of certain public utility claimed rights, "and that it be ousted from using the same."

The petition alleges that the respondent is an Ohio private corporation, operating a public utility, and engaged in the business of generating and distributing electricity in the state of Ohio, with its principal office in Akron, Summit County, Ohio; that, pursuant to the laws of the state, there has been created in and for Summit County a Tri-County Regional Planning Commission, which has, pursuant to Section 713.23, Revised Code, "promulgated and duly adopted plans of and for the regions of Summit County which includes the township of Northampton [Summit County], Medina County, and Portage County; that said plans contain recommendations for systems of transportation, highways, park and recreational facilities, water supply, sewer lines, civic centers, and other public improvements which affect the development of the said regions including railroads and power lines; * * * the Board of County Commissioners of Summit County, Ohio, has duly adopted said plans in accordance with and pursuant to Section 713.25, Ohio Revised Code, [and] that it has certified the fact of such adoption to the said Summit County Tri-County Regional Planning Commission."

The petition continues by alleging that the respondent, the Ohio Edison Company, "claiming as a matter of right, is engaged in the construction and location of power lines and incidents thereto in said Northampton Township in Summit County; *that said construction and location consti-*

*tutes a departure from said plans and that the said Board of County Commissioners has not authorized said construction and location pursuant to Section 713.25, Revised Code; and that said respondent has assumed and used and is now using franchise rights and privileges * * * not having been granted to it by any lawful authority, and without the consent or authority of the relator, state of Ohio, or the * * * Board of County Commissioners."* (Emphasis ours.)

Issues were joined by answer, and reply.

In the answer, the respondent corporation pleads that it was organized "to manufacture, acquire by purchase, lease or otherwise, transmit, distribute, sell and supply electricity to public and private consumers for light, heat and power and any or all other uses"; and that by virtue of its charter, and the Ohio statutes, it is "duly authorized and empowered to carry on the manufacture, generation, transmission, distribution and supply of electricity for light, heat and power to public and private consumers throughout the state of Ohio, and in connection therewith, to locate, construct and maintain poles, wires, lines and other facilities necessary for such purposes, subject only to regulation thereof in the manner and to the extent authorized by the statutes of the state of Ohio."

The answer continues with a lengthy narration of present and proposed facilities for the conduct of the company's business in servicing consumers in a number of counties in the state of Ohio, including Summit County, and, in connection therewith, alleges that it has lawful authority, under Ohio laws, to locate, construct and operate the transmission lines, and other facilities in controversy, and "there is existing no lawful and authorized regulation or other action of any governmental body restricting such authority."

The respondent's third defense specifically challenges the legality of the actions of the planning commission by claiming that whatever action was taken in respect to adopting a regional plan was not taken by the commission itself, but was taken by a committee of the commission. This defense is plead as follows:

"There has heretofore been created for Summit, Me-

dina and Portage Counties, a Tri-County Regional Planning Commission. The staff of said commission prepared a 'Regional Land Use Plan' * * *. On May 27, 1964, some of the members of the Tri-County Regional Planning Commission, referred to as the 'Executive Committee' met and adopted the plan. Thereafter, on July 20, 1964, the secretary of said commission transmitted to the Board of Summit County Commissioners a purported Resolution of the Tri-County Regional Planning Commission, dated May 27, 1964, adopting the plan although said commission had not, and has not as of the filing of this answer adopted the plan * * *. Said plan was adopted by the 'Executive Committee' of said commission without public notice of its proposed action and without the holding of a public hearing as to the plan as required by law and the plan is without force and effect in law.''

Directing our attention at this point to this third defense, and to the powers and duties of a regional planning commission as incorporated in Sections 713.23 and 713.24, Revised Code, we find the evidence to be:

1. In March of 1963, the staff of a duly created Regional Planning Commission prepared a Regional Land Use Plan, a Regional Water Resources Development Plan, and a Regional Sanitary Sewage Disposal Plan, and submitted them to the Regional Planning Commission. Plans for the location or installation of utility facilities in the areas of electricity, gas, and telephone were not, and never have been, prepared. None of the plans submitted were formally adopted by the planning commission.

2. A stipulation entered into by the parties appears in the following terms:

''On May 27, 1964 twelve (12) members of the thirty (30) member 'Executive Committee' of the planning commission and eight (8) other persons, some of whom were members and some of whom were alternates for members of the 75 member planning commission, held a meeting designated in the minutes as a meeting of the 'Executive Committee,' and voted to adopt the Regional Land Use Plan. * * * No public hearing was held on the adoption

of said plan by either the planning commission or the 'Executive Committee.' The by-laws of the planning commission provide that upon the adoption by the 'Executive Committee' of a plan of the kind and character described in Sections 713.23 *et seq.,* Revised Code, the planning commission shall cause a copy thereof to be sent by mail or delivered personally to each member of the planning commission and cause a written record to be made of each such mailing or delivery, and that any member of the planning commission may within 10 days after the mailing or delivery of his copy demand a special meeting. The members of the planning commission had received copies of the plan at the time of or shortly after the completion of the plan by the staff in April, 1963. No copies of the Regional Land Use Plan as voted upon by the 'Executive Committee' were mailed or delivered to any person serving as a member of the planning commission on or after May 27, 1964, nor is there any written record thereof. On June 12, 1964 the Executive Director of the Planning Commission addressed a letter to the political subdivisions named thereon, of which fifteen (15) were cooperating in the maintenance of the planning commission and had representatives thereon, transmitting copies of the plan, advising such subdivisions that the plan had been adopted, and asking the subdivisions either to adopt or to reject the plan and if they rejected it, to state their reasons for doing so. On July 20, 1964 the Executive Director of the Planning Commission sent letters to the Boards of County Commissioners of Summit, Medina, and Portage Counties, stating that the plan had been adopted by the planning commission and requesting that the boards adopt the same. The planning commission, as distinguished from the 'Executive Committee,' has never voted on the adoption of the Regional Land Use Plan.

"On July 20, 1964, James E. Farmer, acting as Executive Director of the Planning Commission wrote a letter to the Board of County Commissioners of Summit County and transmitted therewith a paper entitled 'Resolution,' dated May 27, 1964, purporting to be a resolution of the Planning Commission adopting the Regional Land Use

Plan. No action adopting this resolution has been taken except at the meeting of the 'Executive Committee' on May 27, 1964 * * *.''

This stipulation of facts, as well as the evidence, and the reasonable inferences to be drawn therefrom, fail to show any specific action taken by the Tri-County Regional Planning Commission in an adoption of the ''recommendation'' provided in Section 713.23, Revised Code, although the Code stipulates that the commission itself shall perform the various acts therein permitted. This section reads as follows:

''The regional or county planning commission shall make studies, maps, plans, and other reports of the region or county respectively, which may include adjoining areas, showing the commission's recommendation for systems of transportation, highways, park and recreational facilities, the water supply, sewerage and sewage disposal, garbage disposal, civic centers, and other public improvements and land uses which affect the development of the region or county respectively, as a whole or as more than one political unit within the region or county, and which do not begin and terminate within the boundaries of any single municipal corporation.''

Section 713.24, Revised Code, provides that the *regional planning commission,* after making a regional plan, shall certify a copy thereof to the board of county commissioners, and, thereafter, by virtue of Section 713.25, Revised Code, ''the board of county commissioners may adopt such plan so far as it relates to nonmunicipal territory. Thereafter no public building, roadway, bridge, viaduct, or other public improvement or *utility,* publicly or privately owned, whose construction or location would constitute a departure from the plan, shall be constructed or authorized by the board except by unanimous vote.'' *State, ex rel. Kearns, Pros. Atty.,* v. *Ohio Power Co.,* 163 Ohio St. 451.

It is held, in *State, ex rel. Ohio Power Co.,* v. *Franklin County Regional Planning Commission,* 158 Ohio St. 496, that the powers and duties of the commission are limited to the making of plans showing *its* recommendations, and

that such plans and recommendations are without legal effect until adopted by the county commissioners, and that the functions of the commission are purely ministerial.

It appears obvious, we believe, that the legislative intent in the statutes, giving rise to a right of county commissioners, upon the recommendation of a commission, to regulate and control the location of the facilities of a public utility is that the "recommendation" come from the agency designated rather than from some subordinate committee of the agency. It has been said in legal forums, and this court adopts the principle, that a regional planning commission cannot delegate to a committee the very function for which the commission exists. It is the function of the commission, as a legal unit, to "recommend" to the commissioners, which recommendation alone gives power to the county commissioners to act. Apparently, nothing more or nothing less is required, although a serious question of due process is raised when valuable property rights are taken without notice or a right to be heard. The statutes make no such provision, and, in the instant case, none was given.

It is our conclusion, on this phase of the case, that the Regional Land Use Plan has not been formally or legally adopted by the Regional Planning Commission, and, as a consequence, any action taken by the Board of County Commissioners in respect thereto has no validity.

It is contended by the relator that the respondent has failed to pursue administrative remedies available to it, and is, therefore, precluded from challenging the actions taken by these agencies of government; that, if the respondent is adversely affected, it could appeal from the order of the county commissioners to the Court of Common Pleas, pursuant to Section 307.56, Revised Code. (There are many authorities which hold that a failure to exhaust administrative remedies generally precludes court relief. This rule, however, is not applied where the defect relates to the power or authority of an agency to act in any respect; as applied to this case, the authority of the county commissioners had not been invoked as the planning com-

mission, as such, had failed to "recommend" any plan to the Board of County Commissioners.)

We hold this claim untenable.

The respondent strenuously urges additional defenses to the relator's action. Specifically, it claims that legislation enacted subsequent to the enactment of Sections 713.-23 and 713.25, Revised Code, now control despite the ruling in *State, ex rel. Kearns, Pros. Atty.,* v. *Ohio Power Co.,* 163 Ohio St. 451; that a power line meeting the requirements of Section 4905.65, Revised Code, is subject to regulation solely by the state of Ohio, and is not subject to regulation by the county commissioners acting under Section 713.23 and 713.25, Revised Code. It further says that the enforcement of the plan against the respondent will unconstitutionally confiscate the respondent's interests in property acquired before the planning commission or the county commissioners had taken any action with respect to the plan.

These, and other defenses, have been all considered; however, in the light of the conclusions heretofore reached, we find it unnecessary to incorporate our conclusions as to them in this opinion.

*Writ denied.*

BRENNEMAN, P. J., and HUNSICKER, J., concur.