415 So.2d 1043 (1982)
STATE of Alabama
v.
Catherine TAYLOR, et al.
80-492.
Supreme Court of Alabama.
April 9, 1982.
Rehearing Denied June 11, 1982.
Lloyd Copeland, Mobile, for appellant.
Daniel L. McCleave, Mobile, and Priscilla Ruth MacDougall, Madison, Wis., for appellees.
MADDOX, Justice.
The main issue on this appeal involves the constitutional question of a married woman's right to register to vote in her maiden name.
A secondary issue is whether plaintiffs' failure to comply with statutory provisions governing appeals concerning voter registration barred them from filing suit. Also *1044 presented is a question of whether the State of Alabama was made a party to the action as a necessary party.
The facts are not disputed. On October 23, 1980, Catherine Taylor and Georgia M. Theriot, who are married women, filed a complaint with the circuit court in which they claimed that the Board of Registrars of Mobile County had refused to allow them to register to vote in their maiden surnames. They further alleged that the Board's policy of requiring a married woman to register to vote in the surname of her husband was contrary to statutory law and the common law, and that irreparable injury would result to them unless they were allowed to register "under the names they use and are known by." They prayed for a temporary restraining order and general relief.
The trial judge held a hearing on the request for a temporary restraining order on October 24, 1980, and afterwards entered an order granting the temporary restraining order as prayed for. The order directed the board to register Taylor and Theriot in their maiden surnames. A final hearing was set for a later date.
The Board of Registrars filed an answer to plaintiffs' complaint in which they stated the policy of the board was to register persons to vote in their legal names, and that the legal name of a married woman is her husband's surname. In its answer, the Board also raised, as an affirmative defense, that it was not the proper party defendant in the action. The board had previously raised, at the commencement of the hearing on plaintiffs' application for a temporary restraining order, that it was not the proper defendant.
The State of Alabama contemporaneously filed a motion to intervene and to be substituted as party defendant in the matter. This motion was granted by the trial court. After being served with copies of the State's motion to intervene and for substitution of parties defendant, the Attorney General waived any further notice of the proceedings. The State's answer, filed with its motion to intervene, stated: that the policy of the board was to register all voters in their true, legal names, the legal name of a married female being the surname of her husband; that any alleged injury to plaintiffs would not be irreparable; that plaintiffs had failed to follow the procedure prescribed by law for challenging their denial of voter registration and were, therefore, barred from maintaining the instant action; that the relief sought was contrary to law and public policy as it relates to the orderly administration of the voting franchise and the prevention of fraud and collusion therein; and that the complaint failed to state a claim upon which relief could be granted.
The trial judge held a final hearing on December 15, 1980. The court, after denying the State's motions for an involuntary dismissal of plaintiffs' claim (Rule 41(b), ARCP), ordered that the injunctive relief granted on the application for a temporary restraining order be made permanent. The order entered by the trial court permanently restrained the State from refusing to allow plaintiffs or any other married woman from registering to vote "under the names by which they have chosen to be known and have used subsequent to this proceeding."
The State filed a motion for a new trial, a motion to alter and amend the judgment, and on January 14, 1981, a motion for leave to amend the foregoing motions. These motions, which raised numerous legal issues, were denied by operation of law, because of their pendency in the trial court for over ninety days without a ruling being made. The State appealed.

I
The State argues that Alabama's statutory scheme for voter registration provides a method of appeal by any person who is denied registration, as plaintiffs were, and that plaintiffs' failure to appeal as required by law should bar the action they filed.
Code 1975, § 17-4-124, provides:
"Any person to whom registration is denied shall have the right of appeal, without giving security for costs, within *1045 30 days after such denial, by filing a petition in the circuit court in the county in which he or she seeks to register, alleging that he or she is a citizen of the United States over the age of 18 years having the qualifications as to residence prescribed by law and entitled to register to vote under the provisions of the Constitution of Alabama, as amended. Upon the filing of the petition, the clerk of the court shall give notice thereof to the district attorney authorized to represent the state in said county, who shall appear and defend against the petition on behalf of the state. The issues shall be tried in the same manner and under the same rules that other cases are tried in such court and by a jury, if the petitioner demands it. The registrars shall not be made parties and shall not be liable for costs. An appeal will lie to the supreme court in favor of the petitioner if taken within 42 days from the date of the judgment. Final judgment in favor of the petitioner shall entitle him or her to registration as of the date of his or her application to the registrars."
The evidence clearly shows that neither of the plaintiffs appealed to the circuit court within 30 days after the board refused to register them in their maiden names. Did this failure to appeal pursuant to § 17-4-124 bar them from filing an action in which they seek to vindicate not only their own alleged right to register in their maiden names, but the rights of other married women who may wish to register to vote in their maiden names?
The crucial legal question presented is whether the existence of a legal remedy to seek redress from a denial of voter registration bars any other remedy, legal or equitable. We do not believe that the legal remedy of an appeal given to an individual applicant who has been denied registration would allow a circuit court jurisdiction to decide such a crucial issue of constitutional law as was raised by the plaintiffs in their complaint.
Plaintiffs contend that § 17-4-124 applies only when an applicant has been denied registration because the applicant was found to be unqualified. The State considers this argument by plaintiffs to be without merit. The State argues, in its brief:
"The entire chapter speaks in numerous places of `qualified' and `unqualified' electors and of electors' `qualifications.' Qualifications, as defined in § 17-3-9, refers to the traditional criteria of residence, age, and conviction of crime. The question therefore immediately arises as to why the legislature used the specific term `any person to whom registration is denied,' amidst all the accompanying provisions about qualifications, if it did not mean precisely what it said. In point of fact, the specific term `to whom registration is denied' appears in one place in the statutory setup, and that is in the section governing appeals. It would have been a simple matter indeed to state `any person who is deemed unqualified,' the precise language used in the preceding section on refusing to register unqualified applicants. The fact that this specific language appears only once, rather than being mingled in various places throughout those portions of the statute dealing with qualification, militates [against a finding] that it is not an interchangeable term with `deemed unqualified.'"
We hold that the plaintiffs' interpretation of § 17-4-124, relating to appeal from a denial of registration, comports more with what the legislature actually intended. It should be noted that in § 17-4-124, the legislature provides that:
"The issues shall be tried in the same manner and under the same rules that other cases are tried in such court and by a jury, if the petitioner demands it." (Emphasis added.)
What issues were to be tried? It would seem that the most logical "issues" would be those factual issues involving qualifications, as defined in § 17-3-9, such as residence, age, and conviction of crime. It would appear that the legislature intended that, on appeal, the factfinder, whether the judge or jury, would decide only factual *1046 issues. We do not suggest, however, that the plaintiffs could not have appealed and raised the legal issue they later raised in this action, but only that their failure to appeal within 30 days did not bar their subsequent action.
There is another reason why this action was not barred. While § 17-4-124 does provide that "[f]inal judgment in favor of the petitioner shall entitle him or her to registration as of the date of his or her application to the registrars," we do not believe that this relation back provision is of any legal significance here, because the injunctive relief granted was prospective, and it is not denied that the Board's policy on refusing to register married women in their maiden names had not changed, and the State still seeks to sustain its constitutional validity.
While the statutory scheme for voter registration differs somewhat from other administrative schemes, the principles of law applicable to review of administrative proceedings are instructive. In Simpson v. Van Ryzin, 289 Ala. 22, 265 So.2d 569 (1972), the Court held:
"Although administrative remedies must generally be exhausted before resort can be had to the courts, such exhaustion will not be required where the issue to be decided is solely a matter of law, not dependent upon disputed facts. Borough of Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 240 A.2d 8 (1968); Louisville & Jefferson County Planning & Zoning Comm. v. Stoker, 259 S.W.2d 443 (Ky.Ct.App.1953). Among the specific instances in which exhaustion has been held not necessary are the following: where a statute, ordinance, or regulation is charged to be void on its face, or where there is a question of its applicability, Diggs v. State Bd. of Embalmers & Funeral Directors, 321 Mich. 508, 32 N.W.2d 728 (1948); Fischer v. Bedminster Tp., Somerset County, 5 N.J. 534, 76 A.2d 673 (1950), where there is a defect in the power of the agency to act in any respect, State ex rel. Barbuto v. Ohio Edison Co., 16 Ohio App.2d 55 [45 O.O.2d 159], 241 N.E.2d 783 (1968), affirmed [16 Ohio St.2d 54], 242 N.E.2d 562 [(1968)], where administrative review procedures are legally inadequate, Ryan v. Hofstra University, 67 Misc.2d 651, 324 N.Y.S.2d 964 (1971)."
In this case the issue to be decided was solely a matter of law, not dependent upon disputed facts; therefore, the court did not err in refusing to dismiss plaintiffs' action because they failed to appeal as provided by § 17-4-124.
The State's claim that the proper parties were not before the court must be dismissed almost summarily. The State intervened in the action, vigorously sought to sustain the Board's policy of refusing to register married women in their maiden names, and vigorously prosecutes its appeal in this Court. The provisions of Rule 1, A.R.C.P., and Rule 1, A.R.A.P. that our procedural rules should be construed to assure the just, speedy and inexpensive determination of every proceeding on its merits are too plain for us to agree with the State in this case.

II
We now consider the merits of the case. Did the trial court err in ordering the State to register married women to vote "under the names by which they have chosen to be known and have used"? We hold that the trial court did not err.
The law of Alabama, as it relates to names, is stated succinctly in Ingram v. Watson, 211 Ala. 410, 100 So. 557 (1924):
"In Milbra v. S.S.S. & I. Co., 182 Ala. 630, 62 South. 179, 46 L.R.A.(N.S.) 274, this court wrote:
"`A person may adopt what name he pleases, and if he deals with others, or goes to court in a name, no matter what, no harm is done.'
"In 29 Cyc. p. 270, we find this general text:
"`Without abandoning his real name a person may adopt any name, style or signature wholly different from his own name by which he may transact *1047 business, execute contracts, issue negotiable paper and sue and be sued.'
"This is supported by Carlisle v. People's Bank, 122 Ala. 446, 26 South. 115."
In Alabama Clay Products v. Mathews, 220 Ala. 549, 126 So. 869 (1930), this Court quoted with approval the following from 45 C.J. at page 381:
"`Where it is not done for a fraudulent purpose and in the absence of statutory restriction, one may lawfully change his name without resort to legal proceedings, and for all purposes the name thus assumed will constitute his legal name just as much as if he had borne it from birth.'"
We are not aware of any statutory restriction which requires that married women not be permitted to register to vote, if otherwise qualified, under the names by which they have chosen to be known and have used; provided, of course, it is not done for a fraudulent purpose.
Alabama has adopted the common law of England (Code 1975, § 1-3-1), and in view of the fact that the common law regarding "names" has not been altered by the legislature as far as we know, we adopt the common law of England in resolving this dispute.
What was the common law of England regarding "names"? The State cites Forbush v. Wallace, 341 F.Supp. 217, 221 (M.D. Ala.1971), aff'd per curiam, 405 U.S. 970, 92 S.Ct. 1197, 31 L.Ed.2d 246 (1972), which does state:
"We may commence our analysis of the merits of the controversy by noting that Alabama has adopted the common law rule that upon marriage the wife by operation of law takes the husband's surname. Roberts v. Grayson, 233 Ala. 658, 660, 173 So. 38 (1937); Bentley v. State, 37 Ala. App. 463, 465, 70 So.2d 430 (1954)."
It appears that at the time Forbush was decided, there was no procedure whereby the federal court could certify a question of state law to this Court for instructions such as we now have. Rule 18, A.R.A.P. It also appears that both sides in the Forbush case conceded that the rule set out in Forbush was the common law rule.
In brief, the plaintiffs, through their counsel, have set out what they contend to be the common law of England, that is, that all persons have the right, irrespective of marriage, to use the name or names of their choice so long as the name is not used for a fraudulent purpose. They have also argued that Forbush inaccurately stated the common law rule, and should not be followed.
Our research has convinced us that Forbush v. Wallace does not accurately state the common law on names, and that the case of Kruzel v. Podell, 67 Wis.2d 138, 226 N.W.2d 458 (1975), 67 A.L.R.3d 1249, correctly holds that the common law of England could be summarized as follows:
"`When a woman on her marriage assumes, as she usually does in England... the surname of her husband in substitution for her father's name, it may be said that she acquires a new name by repute.... The change of name is in fact, rather than in law, a consequence of the marriage.'"
The right of women to use their maiden surnames has received considerable attention recently in commentaries and court decisions. See 67 A.L.R.3d 1249; Comment, The Right of Women to Use Their Maiden Names, 38 Albany L.Rev. 105 (1973); Comment, Married Woman's Right to Her Maiden Name: The Possibilities for Change, 23 Buffalo L.Rev. 243 (1973); Bysiewicz and MacDonnell, Married Women's Surnames, 5 Conn.L.Rev. 598 (1973); Hughes, And Then There Were Two, 23 Hastings L.J. 233 (1972); Comment, The Right of a Married Woman To Use Her Birth-Given Surname for Voter Registration, 32 Md.L.Rev. 409 (1973); Carlsson, Surnames of Married Women and Legitimate Children, 17 NYLF 552 (1971); Comment, A Woman's Right to Her Name, 21 UCLA L.Rev. 665 (1973); Lamber, A Married Woman's Surname: Is Custom Law? 1973 Wash.ULQ 779 (1973).
The State argues that the common law of Alabama could be different from the common law of other states, and suggests that because of that fact, the Forbush result *1048 should be upheld. The State further argues:
"Even if the adoption by married women of their husband's surnames is held by this Court to be a matter of custom and fact, not law, the Board's policy should still prevail. This Court can judicially notice that the overwhelming majority of married women use their husband's surnames. This is not to derogate those women who use their birth surnames, but to point out a fact of great importance in the government's identification of voters. The husband's surname is an identification label which has the virtue of keeping administrative affairs orderly. Since most married female voters, by far, use the husband's surname, that is the name to use if you want to maintain a onename identity check on voters. If, for voting purposes, any voter is conceded more than one `legal' name, the potential for confusion is merely apparent. Admittedly, the plaintiffs have used their birth surnames their entire lives, but permitting them to vote thereunder will have to mean that any married woman who desires to resume using her birth surname, or adopt a hyphenated name, or use a totally assumed name, must be permitted to vote thereunder. This is the crux of the argument. As noted above, the Forbush decision validated State policy in this respect."
Even though the State is correct in stating that most married women customarily assume the surnames of their husbands, and register to vote in the surnames of their husbands, we hold that they are not legally required to do so. While the State suggests that allowing married women to register in their maiden surnames will create confusion, we believe that the legitimate interests of the State in preventing fraud in the election process can be satisfied without undue cost or harm.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I concur in the decision of this Court; however, it would appear that the Legislature in its wisdom and power could enact legislation dealing with the use of surnames in voter registration as long as the rational purpose of the legislation was to prevent confusion and fraud in the election process.