Wendy **FORBUSH**, on behalf of herself and others similarly situated, Plaintiff,

v.

George C. **WALLACE**, Individually and as Governor of the State of Alabama, et al., Defendants.

Civ. A. No. 3394–N.

United States District Court,
M. D. Alabama, N. D.

Sept. 28, 1971.

---

Ralph Knowles (Drake, Knowles & Still), Tuscaloosa, Ala., for plaintiff.

William J. Baxley, Atty. Gen., of Alabama, and J. Victor Price, Jr., and Richard F. Calhoun, Asst. Attys. Gen., Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

PER CURIAM:

Plaintiff brings this class action challenging the unwritten regulation of the Alabama Department of Public Safety which requires that each married female applicant use her husband's surname in seeking and obtaining a driver's license. The thrust of the complaint is that the refusal of the Department to issue plaintiff Forbush a driver's license in her maiden name because she is married[1] is a denial of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Also under attack is Alabama's common law rule that the husband's surname is the wife's legal name. Plaintiff further alleges that the Department's conduct violates 42 U.S.C. § 1983. Subject matter jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343, and 2201.

■ Since the cause of action has arisen in part under 42 U.S.C. § 1983 and because jurisdiction is partially conferred by 28 U.S.C. § 1343, the action may be brought without regard to the amount in controversy. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 412 n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Joined as defendants are George C. Wallace, individually and as Governor of the State of Alabama, Colonel Walter Allen, individually and as Director of the State Department of Public Safety, and Major Claude S. Prier, individually and as Chief, Drivers License Division, State Department of Public Safety. Because of the apparently substantial constitutional question raised concerning the validity of an agency regulation of state-wide application, a three-judge court was empanelled pursuant to 28 U.S.C. §§ 2281 and 2284. See King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Alabama Public Service Comm. v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). A hearing having been held, with evidence presented by both sides, the case is now before us on the plaintiff's request for a preliminary injunction. Through the Attorney General, the defendants have moved the Court: (1) to dismiss for failure to state a claim upon which relief can be granted, (2) to dissolve the three-judge court, and (3) to dismiss as a class action.

■ By their motion to dismiss, the defendants have admitted the material facts alleged in the complaint. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23, L.Ed.2d 404 (1969); Coffee v. Permian Corp., 434 F.2d 383, 384 (5th Cir. 1970). In addition, it is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, in measuring the motion to dismiss against the complaint, it must be assumed, before ever reaching the merits of the case, that it is the policy of the Department of Public Safety to require that married women use their husbands' surnames, that the plaintiff was denied a license solely because she sought to obtain it in her maiden name, and that plaintiff continues to use her maiden name in all her business affairs. From these facts, we conclude that

---

1. The evidence reflected that plaintiff is married to Ronald P. Carver.

plaintiff has alleged sufficient facts to withstand the motion to dismiss. Accordingly, federal subject matter jurisdiction has been established.

■ Having determined that this cause is properly in the federal courts, we are faced with the defendants' motion to dissolve the three-judge panel. Because of the burdensome aspects of the three-judge procedure, the Supreme Court has interpreted 28 U.S.C. § 2281 not "as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). Thus, a three-judge panel is appropriate only when the constitutional question presented is substantial. The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness clearly results from the previous decisions of the Supreme Court. California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). Finally, the challenged law or regulation must be of state-wide application. Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Griffin v. County School Board, 377 U.S. 218, 227–228, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

■ The evidence affirmatively reflects that the Department of Public Safety's regulation proscribing married women from using their maiden names is state-wide in effect. Further, while the burden placed upon women by the defendants in this case does not appear to be particularly onerous, we think that it raises important and current questions concerning the constitutional rights of women. Although a case involving the maintenance of segregated seating on a public conveyance would not on its face seem as significant as a case concerning school desegregation, each would present basic constitutional issues. Thus, we are faced with a similar question of whether a state may impose a burden on one sex that it does not place on the other. Nor are we able to conclude that the result in this case is clearly compelled by previous decisions of the United States Supreme Court. On the contrary, no area of the law seems more unsettled today than the guarantees and the protection of women's rights under the Constitution. Compare Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) and Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) with Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) and Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969) and White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966). Therefore, it is the judgment of the Court that the three-judge panel is properly convened.

The final motion of the defendants is that the class action aspect of the suit be dismissed. Defendants allege that plaintiff's claims are atypical of the claims of the class she purports to represent. See Federal Rules of Civil Procedure 23(a)(3). The thrust of defendants' motion is that there has been no clear showing that any significant number of married women are within the class of those who wish to be known by their maiden names. Thus, defendants are actually attacking plaintiff's assertion that the members of the class are so numerous as to render their joinder impracticable. See Federal Rules of Civil Procedure 23(a)(1).

■■ It has become well established in our law that "impracticability" as used in Rule 23 does not mean "impossibility," but rather it refers to the difficulty or inconvenience of joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–914 (9th Cir. 1964); Union Pacific Railroad Co. v. Woodahl, 308 F.Supp. 1002, 1008 (D.Mont.1970). It appears that the question of whether a number is so large as to make joinder impracticable is dependent not upon any arbitrary limit, but rather upon the circumstances surrounding the case. 3B

Moore's Federal Practice ¶ 23.05, at 277–78 (2d ed. 1969).

Some evidence was presented to the effect that other married women do desire to be known by their maiden names. To obtain a complete picture of the extent to which women as a whole entertain such a view would appear to require nothing less than a comprehensive public opinion poll. Certainly this would appear to be the height of impracticability. The case, therefore, will be allowed to proceed as a class action.

The fact that federal jurisdiction exists, of course, does not mean that it necessarily ought to be exercised. Particularly in cases where the constitutionality of a state regulation is involved, it is a judicious policy for the federal courts to consider the possibility of abstention.

In evaluating the propriety of abstention, the federal judiciary must consider whether their intercession will cause needless conflict with the administration by the state of its own affairs or whether the case may be decided by a construction of the applicable state law. See Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 349–350, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Railroad Commission v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). On the other hand, because the doctrine is one of compromise, it is necessary to take account of any appropriate countervailing interests.

There are some parallels between the instant case and the *Alabama Public Service Commission* case. Both involve constitutional challenges to the regulation of an Alabama administrative agency. In the *Alabama Public Service Commission* case, the Supreme Court noted that the federal court had been asked to intervene in an essentially local dispute involving the discontinuance of certain intrastate trains. 341 U.S. at 347, 71 S.Ct. 762, 95 L.Ed. 1002. The railroad had argued that requiring it to operate trains at a loss was a denial of due process. *Id.*

In the case *sub judice,* however, plaintiff seeks to protect her civil rights. Although the state has a keen interest in the dispersal and administration of its drivers' licenses, this case is not strictly a local controversy with no opportunity for nation-wide impact. As the Supreme Court said in McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1963):

> [P]etitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law., . . . Such claims are entitled to be adjudicated in the federal courts. *Id.* at 674, 83 S.Ct. at 1437.

While we need not decide whether sex has followed race into the fold of suspect classifications, we do find sufficient similarity between civil rights cases involving racial minorities and the rights sought to be vindicated here to lead us to the conclusion that it would be improper to deny plaintiff a federal forum.

We may commence our analysis of the merits of the controversy by noting that Alabama has adopted the common law rule that upon marriage the wife by operation of law takes the husband's surname. Roberts v. Grayson, 233 Ala. 658, 660, 173 So. 38 (1937); Bentley v. State, 37 Ala.App. 463, 465, 70 So.2d 430 (1954). Apparently, in an effort to police its administration of the issuance of licenses and to preserve the integrity of the license as a means of identification, the Department of Public Safety has required that each driver obtain his license in his "legal name." Thus, in conformity with the common law rule, the regulation under attack requires that a married woman obtain her license in her husband's surname.

As has been previously indicated, the state has a significant interest in

maintaining close watch over its licensees. The confusion which would result if each driver were allowed to obtain licenses in any number of names he desired is obvious. This would be true not only of the maintenance of driving records, but also of the identification purposes to which a license is put, whether traffic-related or otherwise. Thus, it is reasonable for the Department of Public Safety to require each driver to secure a license only in his "legal name."

 This determination, however, does not dispose of the case since the plaintiff has also attacked the Alabama Supreme Court's adoption of the common law rule which requires a wife upon marriage to take her husband's surname. This judicial pronouncement, as with any state statute or regulation, must have a rational basis. It is well settled that "the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." Williams v. Rhodes, 1968, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24. Thus, as a general rule, a law is not violative of the Fourteenth Amendment, despite the existence of discrimination in the technical or broad sense, where the law at issue maintains some rational connection with a legitimate state interest. E. g., McDonald v. Board of Election Commissioners, 1969, 394 U.S. 802, 808–809, 89 S.Ct. 1404, 22 L.Ed.2d 739; Kotch v. Board of River Port Pilots Commissioners, 1947, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093. Furthermore, when a court is presented with a challenge to a seemingly valid state law on equal protection grounds, it must sustain that law if it can discern any rational basis. E. g. Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; Metropolitan Casualty

Insurance Co. v. Brownell, 1935, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070; Borden's Farm Products Co. v. Baldwin, 1934, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281.

Certainly the custom of the husband's surname denominating the wedded couple is one of long standing. While its origin is obscure, it suffices for our purposes to recognize that it is a tradition extending back into the heritage of most western civilizations. It is a custom common to all 50 states in this union. Uniformity among the several states in this area is important.

An additional basis exists for finding a rational connection between Alabama's law and a legitimate state interest. The administrative convenience, if not a necessity, is an important consideration.[2]

The evidence in this case reflects that the State of Alabama's system of issuing drivers' licenses and maintaining control over its licensees represents a considerable investment. In balancing the interest of the plaintiff and the members of plaintiff's class against the interest of the state,[3] this Court concludes that the administrative inconvenience and cost of a change to the State of Alabama far outweigh the harm caused the plaintiff and the members of plaintiff's class. In balancing these interests, this Court notes that the State of Alabama has afforded a simple, inexpensive means by which any person, and this includes married women, can on application to a probate court change his or her name. Title 13, Section 278, Code of Alabama (Recomp.1958). Thus, on balance, plaintiff's injury, if any, through the operation of the law is *de minimis*.

 We conclude, therefore, that the existing law in Alabama which requires a woman to assume her husband's surname upon marriage has a rational basis

---

2. Administrative factors have often been considered rational bases for challenged statutes. *See, e. g.*, Hoyt v. Florida, 1961, 368 U.S. 57, 64, 82 S.Ct. 159, 7 L.Ed.2d 118; Wells v. Civil Serv. Com'n, 1967, 423 Pa. 602, 225 A.2d 554, cert. denied, 1967, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598.

3. Korematsu v. United States, 1944, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194.

and seeks to control an area where the state has a legitimate interest.

Accordingly, it is the order, judgment and decree of this Court that plaintiff's motion for a preliminary injunction and motion asking this Court to declare the Alabama Department of Public Safety's regulation that requires a married woman to use her husband's surname in obtaining a driver's license in violation of the Fourteenth Amendment to the United States Constitution, be and each is hereby denied.

It is further ordered that all further relief sought by plaintiff in this cause be and the same is hereby denied.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the plaintiff.