**Jethro HORN, Individually, and on behalf of all fellow employees of the Defendant who are similarly situated, Plaintiff-Appellant,**

v.

**ASSOCIATED WHOLESALE GROCERS, INC., Defendant-Appellee.**

No. 76–1264.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 18, 1977.

Decided May 11, 1977.

William H. Pickett of Pickett & Midkiff, Kansas City, Mo. (Sandra C. Midkiff of Pickett & Midkiff, Kansas City, Mo., on the brief), for plaintiff-appellant.

R. Pete Smith of McDowell, Rice, Baska & Smith, Kansas City, Kan. (Joseph H. McDowell of McDowell, Rice, Baska & Smith, Kansas City, Kan., on the brief), for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The principal questions in this case are first, whether the trial court erred in delaying the certification or noncertification of a class action until the trial on the merits had been completed; second, whether the numerosity requirement of Rule 23 has or has not been satisfied since the class as of the time of filing numbered 41, although at the time of trial it was 46; and third, whether the court erred in denying class relief based on the fact that the plaintiff's individual case was held to have failed for lack of evidence.

Our holding is that the class should have been certified at the earliest possible time and that injunctive relief at least should have been granted since the trial court did find that employment discrimination existed as to the class. We further hold that the numbers were sufficient under the circumstances here presented to warrant class certification.

The action sought relief on behalf of all of the black persons employed at the Associated Wholesale Grocers, Inc., who were similarly situated. Suit was brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, together with the Civil Rights Act of 1866, 42 U.S.C. Section 1981. The discrimination alleged was deprivation of employment opportunities, as well as discrimination in employment conditions and job promotions.

Defendant-appellee, Associated Wholesale Grocers, Inc., is a cooperative grocery with approximately 600 members who own or operate retail stores throughout the Midwest. The main office is in Kansas City, Kansas, which is within Wyandotte County, Kansas. The main distribution warehouse is in Kansas City, Kansas, although a second one is located in Springfield, Missouri.

The appellant is a black male person who has been employed by Associated Grocers (AG) since 1968. During all that time he has been assigned to jobs involving unskilled labor at the Kansas City, Kansas warehouse.

A charge of discrimination was filed by plaintiff-appellant before the EEOC on September 10, 1970. This alleged that he was being subjected to harassment and discrimination in the conditions of his employment and that the unlawful practices were the result of his race. Based upon the complaint, the EEOC made an investigation and determined that a reasonable cause existed to believe that broader-based racial discrimination existed in all of the departments and with respect to all employees of Associated Grocers. Following this, the EEOC entered into a conciliation agreement with Associated Grocers in which an effort was made to remedy the broad-based discrimination. No effort, however, was made to remedy the alleged violations against the appellant. The appellant received a notice of right to sue from the EEOC and proceeded to file the present action in the United States District Court on behalf of himself and his fellow employees.

At trial the evidence showed that the percentage of blacks in Wyandotte County

was 19.11% in 1970. It was 17% in Jackson County, Missouri. The percentage of blacks, according to the evidence, in the employ of AG never exceeded 9% at its Kansas City warehouse. The total percentage of blacks in all of the AG warehouses was a maximum of 6%. No black persons were employed by AG in managerial positions until 1972, despite the fact that there were 135 management level employees working in Associated Grocers in Kansas City, Kansas and Springfield, Missouri. At the time of the employment of the first black employee as a warehouse supervisor, the average number of managerial employees was 140. The percentage of black clerical personnel at the Kansas City facility was 4% in 1969. Since then it has been 2%. For a period of five years prior to trial, only one black manager was employed, although there were six positions filled at managerial levels. This one promotion occurred after the EEOC had commenced investigating. Managerial employment is generally carried out by Associated Grocers through promotions from within. Most personnel evaluations leading to promotions were shown to have come about as a result of informal discussions among the supervisors.

EEOC reports were not filed by Associated Grocers for the years 1968 to 1974 until requests for production of documents on behalf of appellant here demanded production of these forms. Only then did Associated Grocers prepare and file them.

The trial court denied relief to plaintiff-appellant and also on behalf of the class. As to the plaintiff, the court found that:

The specific instances related by the plaintiff regarding extra duties assigned him, denial of seniority rights, and general harassment, if they existed, are not the result of racial discrimination. The defendant has shown to the Court's satisfaction that in each instance there were legitimate reasons for the treatment plaintiff received. The unusual personnel problems existing at the Kansas City warehouse when the Springfield staff was transferred there made assignment of duties, management of operations, and supervision of employees difficult. The additional work load assumed in Kansas City also aggravated this condition. Many of plaintiff's specific complaints therefore can be attributed to the need to have priority jobs attended to and completed with dispatch. Further, the plaintiff's own poor performance record clearly shows the need for his individual supervision and direction. Furthermore, the plaintiff has not shown that any invidious discrimination has been suffered by a fellow black employee on any specific occasion.

The court further found that contrary to plaintiff's charge, he was given the same opportunity as other employees to select or bid for job classifications in the warehouse; that he had never been fired, formally disciplined or laid off. The court also found that he had made no attempt to show that he or anyone else deserved promotion to another department on any specific occasion or that he was as well qualified as other candidates who received promotions. On that account the court said that he had not proven any instance of Associated Grocer's discrimination against him.

On the other hand, the trial court found that from the facts it could be inferred that Associated Grocers had engaged in practices which discriminated against black persons generally. On this subject the court said:

The black laborers in defendant's Kansas City warehouse never numbered over 9% of its total warehouse staff although percentages substantially more than this resided in the surrounding communities. No blacks at all were employed as warehouse laborers at Springfield. The overall percentage of blacks in defendant's warehouse work force, therefore, falls below 6%.

For a period of nine years covered by the evidence in this case, defendant has employed only one black person in its management division, which division had a combined labor force of 160 at both the Kansas City and Springfield facilities in 1974. Thus the percentage of blacks in this division is under 1% of the total.

The percentage of blacks in defendant's entire clerical division equaled only 3% [sic] at its highest level, this being in 1969. That percentage has since fallen.

Commenting on the above statistics, the court said that they showed discrimination and that they were corroborated by evidence of Associated Grocer's employment patterns, practices and policies. Further, the management staff was not shown to have been familiar with the Civil Rights Act of 1964. It had no objective written standards for determining promotions, nor did it have criteria for hiring. One management employee admitted to practicing discrimination in hiring and promotion. The court then described the informal methods which were used by Associated Grocers in hiring its employees and finally said that while the statistics were not overwhelming they were at least suggestive of intentional and unlawful discriminatory conduct on the part of defendant-appellee.

The court held that it had jurisdiction over the class action and that the allegations of the complaint were sufficient. The court said that racial discrimination is by definition class discrimination and hence Civil Rights Act cases are therefore inherently class suits. It then went on, however, to hold that the impracticability of joinder and adequate representation must be proven. It conceded that pleadings are to be read so as to provide relief from racial discrimination on the broadest front. It then held that the plaintiff had satisfied the requirement that all members of the class have common questions of fact to be determined and that the plaintiff's claims are typical of the class generally. Also, the plaintiff was found to be representative of the class and to have ability to protect the interests of the class.

As to numerosity, it was conceded that impracticability does not mean that joinder must have been shown to have been impossible, but only that it would have been difficult or manifestly inconvenient.

In the case at bar the court held that no attempt was made to show that joinder of all members of the proposed class would be impractical since the identity of the class members could be ascertained. The court said that "[a]lthough it might be concluded that these numbers alone justify certification of this suit as a class action, the Court notes that it would be an abuse of discretion to do so merely to avoid multiplicity of suits." Going on to exercise its discretion, it said that there was no indication that the members of the proposed class could not have been joined without undue burden on the plaintiff, and that since Rule 23(a)(1) serves as a safeguard against indiscriminate use of class actions to avoid joinder, it followed that the action could not be maintained as a class action.

Essentially, relief was denied on behalf of the class because of the plaintiff's lack of standing resulting from his failure to prove his own case of discrimination. These determinations as to non-certification of the class and lack of standing to represent the class were made after the case was heard. It was this timing that was responsible for the result. If the court had certified the class as it should have at the earliest possible time, which means prior to the trial, the failure of the plaintiff's suit would not have affected the rights of the other members of the class.

## I.

### THE TIMING OF THE CLASS ACTION CERTIFICATION HEARING

The district court's delay in making a decision on certification of the class until after the trial on the merits appears to be a procedure which is not in harmony with the literal terms of Rule 23(c)(1) or with many of the cases. Rule 23(c)(1) provides:

As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered before the decision on the merits.

The language of the Rule calls for the earliest possible determination. 3B Moore &

Lucas, Moore's Federal Practice par. 23.50, p. 23–1101 & p. 131 n. 1a (1976–77 Supp.). Also, the trial court is obligated to take up class action status whether requested to do so or not by a party or parties where it is an element of the case. *See Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir. 1976).

Rule 23(c)(1), it is true, does not exact hard and fast timing, but the words "as soon as practicable after the commencement of the action" are not to be ignored. Even though, then, timing for the class determination can differ depending upon the circumstances of the case, *see* 3B Moore's Federal Practice, *supra*, par. 23.50, p. 23–1102 & n. 6, the language of the Rule calls for as early a determination as the circumstances permit. *See Philadelphia Elec. Co. v. Anaconda American Brass Co.*, 42 F.R.D. 324, 327 (E.D.Pa.1967). Part of the rationale for early class status determination lies in the need for timely notice to be given to interested parties under other provisions of Rule 23.

■ The instant case was tried as a class action in that it was assumed throughout that there was an affected class, and the question whether there had been a violation of the rights of the members of the class was considered. Yet the court denied the existence of a valid class within the rule and did so based on numerosity alone. The postponement coupled with denial on this ground was unwarranted.

At least two circuits have disapproved this kind of procedure. *Nance v. Union Carbide Corp.*, 540 F.2d 718, 723 n. 9 (4th Cir. 1976) (Title VII action), and *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975).[1] This circumstance, together with the inconsistency involved in trying the case as a class action, finding liability as to the class and at the same time rejecting the class action on the numerosity element, add up to the conclusion that the court's action was not supported even though in some cases postponement could be justified.

The Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), spoke on this matter indirectly when it ruled that a preliminary trial on the merits could not precede determination of whether the action was a class action. This issue was crucial to the payment of notice costs, and hence to the feasibility of the plaintiff maintaining the action. Although *Eisen* did not rule out specific consideration of any aspect of the merits of a case before determination of the class action issue, *see Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 240–41 (10th Cir. 1975) (dissenting opinion), it does generally support the proposition that the class action determination should precede the final trial on the merits.

If after having heard all of the evidence the trial court had denied defendant's *liability* to the class, the resulting prejudice from

1. Other cases have minimized the importance of the lack of a pretrial class action determination in Title VII cases when the action filed is patently a class action and the parties have all proceeded to trial on the assumption that the action was a class action. *See Senter, supra*, at 521–22; *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 49–50 (5th Cir. 1974), *cert. granted*, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976); *Bing v. Roadway Express, Inc.*, 485 F.2d 411, 446–47 (5th Cir. 1973). In *Senter* the trial court did not certify the action as a class action until after the trial on the merits. The Court of Appeals upheld this determination. In *Rodriguez* the trial court had denied class certification after the trial on the merits. The Court of Appeals reversed the denial of certification. The trial court in *Bing* had failed to rule specifically on the class certification issue. On appeal the Fifth Circuit found that a class action

was implicitly determined to be appropriate by the trial court. None of these cases approve postponement of class action status until after the trial on the merits. Instead, they recognize that when the actions and assumptions of the parties and the trial court show clearly that the action was treated as a class action, a post trial certification by the trial court or the Court of Appeals (as in *Bing*) that comports with the requirements of Rule 23(a) and (b) will stand. It is to be noted that in *Senter, Rodriguez* and *Bing* the actions were finally certified as class actions. In the instant case, certification was finally denied after the trial on the merits. Defendant-appellee had sought to have the action dismissed as a class action before the trial. In the case at bar the class action question was present throughout, and so even if the postponement was justified, the court's resolution against a class action was not.

denying certification would have been less palpable. As it is, the denial of class certification while finding injury to the class was, to say the least, inconsistent.

## II.

## WHETHER IT WAS ERROR TO DENY THE CLASS ACTION STATUS

The trial court conceded that Title VII actions together with 42 U.S.C. Section 1981 actions in which racial discrimination is present are in their nature class action suits. The fact situation was recognized by the court as one in which the Rule 23(a) requirements of representativity and typicality had been met. It was the requirement of numerosity under Rule 23(a) which proved to be the impediment. The court considered it necessary that the class have numbers so large that joinder of all the members would be impractical. Since the plaintiff had not satisfied the court that it would prove impracticable to join the number presented which was 41 black employees as of the time of filing and 46 at the time of trial, and since the identity of the persons could be ascertained and most of them were residents of Kansas City, Kansas, certification, the court felt, had to be refused. Finally, the court observed:

> We are aware that the necessity of proving the numerosity requirement must be tempered by the nature and intent of the Civil Rights Acts. However, the Court can act only in its considered judgment and discretion based on the facts before it.

■ Why was it important to give such stress to the requirement of a large number? Considering that the presence of the parties in the class was unimportant to the granting of injunctive relief, this emphasis appears to be misplaced. We conclude that it did not justify rejection of the class. There can be judicial notice that employees are apprehensive concerning loss of jobs and the welfare of their families. They are frequently unwilling to pioneer an undertaking of this kind since they are unsure as to whether the court will support them. Even if they do prevail, they are apprehensive about offending the employer as a result of taking a stand. These are all factors that enter into the impracticability issue. On the other hand, the trial court tended to treat it as a question of numbers. *Cf. Forbush v. Wallace*, 341 F.Supp. 217, 220 (M.D. Ala.1971) (three-judge court), *affirmed*, 405 U.S. 970, 92 S.Ct. 1197, 31 L.Ed.2d 246 (1971); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–914 (9th Cir. 1964). *Forbush, supra*, says that impracticability is dependent not on any arbitrary limit but upon the circumstances surrounding the case.

Frequently in a case such as this, the great emphasis is less on damages than on future compliance and a less strict adherence is seen to Rule 23(a) requirements. *See* Advisory Committee Notes on the 1966 Amendment to Rule 23, 39 F.R.D. 98, 102. *See also* Wright and Miller, Federal Practice, where the authors state that a permissive attitude is reflected by an apparent liberalized application of the Rule 23(a) prerequisites in Rule 23(b)(2) cases. 7 Wright and Miller, Federal Practice Procedure, Section 1771, at 662–663 (1972).

The Fifth Circuit has ruled that the liberal construction just referred to applies to the numerosity requirement. *See Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). The court there recognized that smaller classes are less objectionable where the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members. The plaintiff in that case was a prisoner and the number possibly involved, like the number in this case, was 48.

In another case, *Davy v. Sullivan*, 354 F.Supp. 1320 (M.D.Ala.1973) (three-judge court), in which the recognizable class was limited to 10 persons, the class action was upheld. *See also Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638 (4th Cir. 1975), and *Doe v. Flowers*, 364 F.Supp. 953 (N.D.W.Va.1973) (three-judge court), aff'd mem., 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974). In these cases it was stated that where the relief sought is in-

junctive and declaratory, even speculative and conclusory representations as to the size of the class are sufficient.

Our decision in *Taylor v. Safeway Stores, Incorporated*, 524 F.2d 263, 269 (1975), is not out of harmony with the holdings in the cases cited herein. The only suggestion of inconsistency is found in the court's rejection of Taylor's argument that the typicality requirement is different in Title VII cases than in other class actions. We there said that the technical requirements of Rule 23 must be met. We do not question this premise. We merely recognize here that the Title VII type of case lends itself to the class action approach and it does not call for the presence of absolute numbers. The cases support this viewpoint particularly in the injunction type of suit. They say that the test of numerosity is a balancing test. *See Carey v. Greyhound Bus Co., Inc.*, 500 F.2d 1372, 1380–1381 (5 Cir. 1974), wherein it was suggested that a class of 28 members would suffice.

In one Eighth Circuit case, that of *Arkansas Ed. Ass'n v. Board of Ed., Portland Ark. Sch. Dist.*, 446 F.2d 763 (1971), the class was composed of 17 to 20 black teachers and was found to be sufficient. There the court said:

> In this case some of the teachers no longer teach in the Portland, Arkansas School District; those teachers who remain in the school system could have a natural fear or reluctance to bring this action on an individual basis; and subsequent to filing this action a nondiscriminatory salary schedule was adopted, thereby reducing the potential members of the class and lessening the chance of individual actions by the black teachers affected thereby.

*Id.*, at 765.

In summary then, where, as here, the class is composed of a substantial number, no great need is present to identify each and every one. Since injunctive relief is the main goal of the action, all of the requirements are satisfied, and the equities favor the plaintiff and the class he repre-

sents, it is inappropriate to become stymied by the concept of very large numbers. As was said by the Sixth Circuit in *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (1976):

> There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.

Injunctive relief is no less proper or practical because the number is 41 or 46 rather than some other number.

We must then hold, in view of our circumstances, that the rejection of the class on this ground was erroneous.

### III.

WHERE ENTITLEMENT TO CLASS RELIEF HAS RECEIVED APPROVAL, MAY THE PLAINTIFF WHO ORIGINALLY BROUGHT THE ACTION CONTINUE TO REPRESENT THE CLASS NOTWITHSTANDING THAT HIS OWN PERSONAL CLAIM HAS BEEN DENIED FOR LACK OF EVIDENCE?

The district court denied relief to plaintiff Horn's individual claims of discrimination for lack of evidence.[2] It found, however, that the defendant had engaged intentionally in discriminatory employment practices generally and that the plaintiff had proven a class right to relief. It then held that the plaintiff lacked standing to obtain class relief as a result of failure of his individual claim together with rejection of the class action. On these grounds class relief was denied.

■ We have reversed the trial court's denial of class relief. Having done so, we now consider whether plaintiff can represent the class notwithstanding failure of his individual claim. We hold that he can do so. The cases consistently rule injunctive relief to be appropriate in a class action

---

**2.** We do not disagree with this ruling.

irrespective of whether individual plaintiffs have established their entitlement to relief on individual claims.

Representative cases, which hold that dismissal of an individual's discrimination claim does not result in the elimination of the action on behalf of the class, are as follows: *Senter, supra,* at 516–20; *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 545 (4th Cir. 1975); *Long v. Sapp,* 502 F.2d 34, 42–3 (5th Cir. 1974); *Jack v. American Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir. 1973); *Huff v. N.D. Cass Co. of Alabama,* 485 F.2d 710, 712–13 n. 4 (5th Cir. 1973) (en banc); *Roberts v. Union Co.,* 487 F.2d 387, 389 (6th Cir. 1973); *Moss v. Lane Co., Inc.,* 471 F.2d 853, 855 (4th Cir. 1973); *Brown v. Gaston Cty. Dyeing Machine Co.,* 457 F.2d 1377, 1380 (4th Cir. 1972).

■ The trial court was of the opinion that the individual plaintiff, Jethro Horn, lacked standing to maintain the action once the class action had been rejected, and we must hold that this ruling was incorrect insofar as it was based on lack of Horn's standing. His standing was not thereby lost. It was sufficient that Jethro Horn was and continues to be an employee of the defendant, and has a present, past and future interest in the outcome of the case. He had a good work record with the appellee, having been there for many years and, according to the evidence, he was a reliable employee. Thus, he has a right to consider himself as a candidate for recognition and future promotion and, accordingly, he has an interest in eliminating discrimination. He thereby has standing to maintain the action under Title VII.

Congress has broadly defined the right of a person claiming to be aggrieved to bring an action challenging discriminatory employment practices. *See* 42 U.S.C. § 2000e–5. This authorization includes continuing to attack employment discrimination even after the person has failed in his own action since he is an aggrieved person even in the absence of evidence sufficient to support his personal claim, where, as here, the employment discrimination is being generally practiced in the place where he works. *See* the comments of Justice White in his dissenting opinion in *Sosna v. Iowa,* 419 U.S. 393, 410, 413 n. 1, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Thus, the mere presence of discrimination gives him a sufficient interest to continue the suit on behalf of the class. Standing, then, is not any great problem.

\* \* \*

The judgment of the district court is reversed insofar as it has denied, by its various rulings, class action and equitable injunctive relief to the plaintiff and the class on behalf of whom he has sued. On remand the district court is directed to enter an injunction which prohibits all discrimination in hiring practices as well as promotion practices.

The district court is also directed to reconsider the plaintiff's request for attorney's fees.

It is so ordered.