RENDERED: SEPTEMBER 3, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0680-MR

KRISTINA D. BRATCHER                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE BARRY WILLETT, JUDGE
ACTION NO. 16-CI-005608


STATE FARM FIRE AND
CASUALTY COMPANY; STATE
FARM GENERAL INSURANCE
COMPANY; AND STATE FARM
MUTUAL AUTOMOBILE
INSURANCE COMPANY                                       APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER,[1] AND McNEILL, JUDGES.

---

[1] Judge Joy A. Kramer concurred in this Opinion prior to her retirement effective September 1, 2021. Release of the Opinion was delayed by administrative handling.

McNEILL, JUDGE:  Kristina D. Bratcher ("Kristina") appeals from an order of the Jefferson Circuit Court granting summary judgment in favor of State Farm[2] on her claims for underinsured motorist ("UIM") benefits.  After careful review, we reverse and remand.

On April 16, 2016, Kristina was injured in a motorcycle accident while riding on a motorcycle operated by Raymond Negron.  Kristina filed a claim for UIM benefits under three policies[3] issued by State Farm to Kristina's parents, Don and Tina Bratcher.  The policy Declarations Page lists the named insured as "Bratcher, Don & Tina L, 439 Hillcrest Ave., Louisville, KY 40206-1508."

At the time of the accident, Kristina was approximately 34 years old and living at 107 Forest Court in Louisville, Kentucky, a rental property owned by her parents.  Her mother, who had recently separated from her father, was living with her.  Kristina had not lived with her parents at the 439 Hillcrest address since she was 17 years old.

The parties agree Kristina is not a named insured on the policy and that she is entitled to coverage only if she qualifies as a "resident relative" under the policy's terms.  The definitions section of the policy provides in relevant part:

---

[2] The appellees are State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company.  For ease of reference, we will refer to them collectively as "State Farm."

[3] The relevant language of the three policies is identical.  Therefore, for simplicity, we will refer to these policies as a singular policy.

> **Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
>
> 2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

The policy further defines "person" as "a human being."

On November 10, 2016, Kristina filed suit against State Farm in Jefferson Circuit Court seeking UIM benefits. State Farm moved for summary judgment, arguing that Kristina did not qualify as a "resident relative" under the terms of the policy. On October 25, 2019, the circuit court granted State Farm's motion for summary judgment, finding Kristina was not entitled to UIM benefits because she did not "reside primarily with the first person shown as a named insured on the Declarations page[]," which the Court found to be Don Bratcher, based upon the fact that his name appears before Tina's. This appeal followed.

On appeal, "[t]he standard of review . . . of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. Summary judgment is appropriate where the movant shows that the adverse

party could not prevail under any circumstances." *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002).

Further, the construction and interpretation of an insurance policy is a question of law which we review *de novo*. *Isaacs v. Sentinal Ins. Co. Ltd.*, 607 S.W.3d 678, 681 (Ky. 2020). When interpreting insurance contracts, courts in Kentucky are guided by two cardinal principles: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (citations omitted).

Kristina argues that the circuit court erred in finding that she was not a "resident relative" under the policy. Specifically, Kristina argues the policy language is ambiguous because "named insured" on the Declarations Page is singular and Don and Tina Bratcher are listed as a single insured: "Bratcher, Don and Tina L." She contends State Farm could have delineated which party was the "first" insured, but it did not do so. Instead, the Declarations Page lists the Bratchers together, as husband and wife, giving them equal status as named insureds. Kristina cites *State Farm Mutual Automobile Insurance Companies v. Queen*, 212 Mont. 62, 64, 685 P.2d 935, 936-37 (1984), in support of her position.

In that case, under similar facts, a divided Montana Supreme Court held nearly identical policy language to be ambiguous. There, the Declarations Page listed the insureds as: "Queen, Gary A. and Rhonda R." The majority noted that the first-named in the declaration was simply "Queen." *Id.*, 212 Mont. at 65, 685 P.2d at 937. Following the last name, the names Gary and Rhonda were coupled. This suggested "an intention on the part of State Farm to grant no preference to one of the individuals as a first-named insured . . . ." *Id.*

Here, the policy's listing of "Bratcher, Don and Tina L" similarly indicates an intention to not give preference to Don or Tina as the "first person shown as a named insured on the declarations page." Supporting this interpretation is the fact that "named insured" is singular on the Declarations Page above where "Bratcher, Don and Tina L" is listed, suggesting Don and Tina were considered a single unit. However, the circuit court found that Don Bratcher was the "first person listed as a named insured," based upon the simple fact that his name appears before Tina's on the Declarations Page. Both interpretations are reasonable. Therefore, we find the policy ambiguous. *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted) ("A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."). "Additionally, we adhere to our long-held standard that when we interpret insurance contracts, perceived ambiguities and

uncertainties in the policy terms are generally resolved in favor of the insured." *Thomas v. State Farm Fire & Cas. Co.*, ___ S.W.3d ___, No. 2020-SC-0061-DG, 2021 WL 2603412, at *2 (Ky. Jun. 17, 2021) (citing *Kentucky Ass'n of Ctys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005)).  Accordingly, we hold both Don and Tina are first-named insureds under the policy.

Because Kristina was residing with Tina at the time of the accident, there is a genuine issue of material fact as to whether Kristina qualifies as a resident relative under the policy.  The policy defines "resident relative" as "a person, other than you, who resides primarily with the first person shown as a named insured on the Declarations Page . . . ."  Based upon the record, it is unclear whether Kristina "reside[d] primarily" with Tina at the time of the accident.

Kristina has lived at 107 Forest Court since 2001.  Tina has lived at 439 Hillcrest since 1991 but moved in with Kristina around March of 2016.  Tina stated in her deposition that she believed her move to 107 Forest Court was indefinite.  However, Kristina testified that she did not view her mother as living with her because she did not think the arrangement was permanent and her mother came and went as she pleased.  Kristina also stated her mother did not move her clothing into the house but left it in the car, slept on the couch, and did not stay the night every night.  Additionally, while Tina stated she lived at 107 Forest Court for six months, Kristina testified that it was less than two months.

"Residency and intent are questions of fact and not of law where the evidence supports more than one inference upon which reasonable minds may differ." *Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 764 (Ky. 1993). Further, "while the meaning of words in an insurance contract is a question of law, whether the conduct of the policyholder meets the definition of those words is a question of fact for the jury." *Marshall v. Kentucky Farm Bureau Mut. Ins. Co.*, 618 S.W.3d 499, 502 (Ky. App. 2020), *discretionary review denied* (Mar. 17, 2021) (citation omitted).

We view any remaining contentions of error as being moot or without merit.

For the foregoing reasons, the order of the Jefferson Circuit Court is reversed, and this case is remanded for proceedings consistent with this Opinion.

KRAMER, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

DIXON, JUDGE, CONCURRING: I concur with the majority that State Farm's Declarations Page is ambiguous and requires reversal of the trial court's finding otherwise. I believe it is not at all clear under these insurance policies who is, in fact, the first-named insured. The policies define the insureds as: "**You** or **Your** means the named insured *or named insureds* shown on the Declarations Page." (Emphasis added.) While this definition makes a distinction

-7-

for multiple insureds, the Declarations Page makes no such distinction. That page indicates only one "INSURED," *i.e.*, not more than one. Thus, it appears that the Declarations Page itself recognizes only *one* insured–the couple. Therefore, and as argued by Appellant, the policies which are drafted solely by the insurance company, "must be held strictly accountable for the language used." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). Consequently, I would determine coverage in this regard includes Tina as a first-named insured.

However, I write separately to address what I believe to be of greater concern. State Farm's Declarations Page for the automobile insurance policies at issue reflects the following:

NAMED INSURED

BRATCHER, DON & TINA L

Appellant contends that by identifying the Bratchers together, State Farm has made no distinction between husband and wife "being any particular class of insured." Appellant Brief, pg. 3. She argues there is nothing in the automobile policies which would put a policyholder on notice of any differentiation between Don and Tina. Thus, the sole question before us is whether Don should be considered the first-named insured where both spouses are referenced together by a husband's surname?

First, let us consider the cultural tradition of wives taking their husband's surnames upon marriage and the resulting legal implications. This practice historically was known as coverture.

> Coverture is the legal concept of a married woman falling under the authority of her husband without a legal identity of her own. It appeared in England relatively early–around the eleventh century, brought to the region by the Normans. Yet, what emerged in formal legal treatises did not manifest in everyday practice, as women continued to exercise considerable autonomy in public life. By about the eighteenth century, however, the rules of coverture became firmly embedded and strictly enforced within both private and public life. Women were no longer permitted to own property in their own right; where they had been inheriting fairly regularly until around the fourteenth century, inheritance rules now gave preference to males in the devising of property, even distantly related ones, over direct female descendants.

Deborah Anthony, *Eradicating Women's Surnames: Law, Tradition, and the Politics of Memory*, 37 COLUM. J. GENDER & L. 1, 8 (2018) (footnotes omitted). What began as a custom soon became a command.

> [T]he practice of a wife surrendering her name for her husband's was as close to a legal requirement during the modern period as it could be without having any actual legal support as such. The practice became so entrenched, in fact, with such significant implications attached thereto, that when American women began to assert their common law right to choose their name in the late nineteenth and early twentieth centuries, the legal response was swift and negative. In the absence of legal precedent, government and courts stepped in to create it out of whole cloth. The circumstances under which such

cases arose were various. Although women could not be definitively forced to adopt the surname of their husbands in common usage, they could be–and were–punished for their refusal to do so in legal documents, with the sanction of state and federal governments and courts all the way into the 1970s. In a multitude of contexts, courts refused to recognize the individual identities of married women who had retained their birth names, instead holding that their proper and correct identification in the eyes of the law was as the wife of a given man. ***The implications of such rulings are more profound than the simple question of a person's chosen moniker; a woman's entire legal existence was contingent and relational. Allowing her an independent name might also suggest an independent identity, and courts were loath to permit that.***

*Id*. at 10-11 (footnotes omitted) (emphasis added). Kentucky courts, unfortunately, were no different. In *Whitlow v. Hodges*, 539 F.2d 582 (6th Cir. 1976), a married woman filed suit in the Eastern District of Kentucky after she was required to make application for a driver's license in the surname of her husband, despite the fact she maintained her maiden name for all other purposes. Whitlow alleged this policy violated her civil rights under the due process and equal protection clauses of the Fourteenth Amendment. *Id*. at 583. In affirming the district court's dismissal of Whitlow's suit, the Sixth Circuit relied on a federal district court's decision in Alabama dismissing a factually similar case. Therein the Court, reviewing Alabama common law which required a wife to take her husband's surname upon marriage, observed:

-10-

the plaintiff has . . . attacked the Alabama Supreme Court's adoption of the common law rule which requires a wife upon marriage to take her husband's surname. This judicial pronouncement, as with any state statute or regulation, must have a rational basis. It is well settled that "the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." Williams v. Rhodes, 1968, 393 U.S. 23, 30, 89 S. Ct. 5, 10, 21 L. Ed. 2d 24. Thus, as a general rule, a law is not violative of the Fourteenth Amendment, despite the existence of discrimination in the technical or broad sense, where the law at issue maintains some rational connection with a legitimate state interest. *E.g.*, McDonald v. Board of Election Commissioners, 1969, 394 U.S. 802, 808-809, 89 S. Ct. 1404, 22 L. Ed. 2d 739; Kotch v. Board of River Port Pilots Commissioners, 1947, 330 U.S. 552, 67 S. Ct. 910, 91 L. Ed. 1093. Furthermore, when a court is presented with a challenge to a seemingly valid state law on equal protection grounds, it must sustain that law if it can discern any rational basis. *E.g.* Dandridge v. Williams, 1970, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491; Metropolitan Casualty Insurance Co. v. Brownell, 1935, 294 U.S. 580, 55 S. Ct. 538, 79 L. Ed. 1070; Borden's Farm Products Co. v. Baldwin, 1934, 293 U.S. 194, 55 S. Ct. 187, 79 L. Ed. 281.

*Forbush v. Wallace*, 341 F.Supp. 217, 222 (M.D. Ala. 1971), *aff'd*, 405 U.S. 970, 92 S. Ct. 1197, 31 L. Ed. 2d 246 (1972). The Court determined:

the state has a significant interest in maintaining close watch over its licensees. The confusion which would result if each driver were allowed to obtain licenses in any number of names he desired is obvious. This would be true not only of the maintenance of driving records, but also of the identification purposes to which a license is put, whether traffic-related or otherwise. Thus, it is reasonable for the Department of Public Safety to require each driver to secure a license only in his "legal name."

-11-

*Id*. at 221-22.  The Court then concluded:

> [t]he evidence in this case reflects that the State of Alabama's system of issuing drivers' licenses and maintaining control over its licensees represents a considerable investment.  In balancing the interest of the plaintiff and the members of plaintiff's class against the interest of the state, this Court concludes that the administrative inconvenience and cost of a change to the State of Alabama far outweigh the harm caused the plaintiff and the members of plaintiff's class.  In balancing these interests, this Court notes that the State of Alabama has afforded a simple, inexpensive means by which any person, and this includes married women, can on application to a probate court change his or her name.  Title 13, Section 278, Code of Alabama (Recomp. 1958).  Thus, on balance, plaintiff's injury, if any, through the operation of the law is *de minimis*.

> We conclude, therefore, that the existing law in Alabama which requires a woman to assume her husband's surname upon marriage has a rational basis and seeks to control an area where the state has a legitimate interest.

*Id*. at 222-23.  Thus, the wife was required to request a name change, not by statute but by common law, seeking a name change just to retain her maiden name.

It is within this context of history I turn to State Farm's denotation of Don as the first-named insured.  While much has changed in the past 50 years, apparently much stays the same.

> The law governing family relationships has developed significantly during the latter half of the 20th Century; married women are generally accorded the same rights as unmarried women, and strides toward recognizing the equality of women and men have been made and are

-12-

> continuing. Nevertheless, there remain vestiges of the historical treatment of women generally, and married women in particular, within our law, *a treatment which at common law merged the married woman's identity into that of her husband.*

5 WILLISTON ON CONTRACTS § 11:1 (4th ed. 2021) (emphasis added). Has Tina's identity herein been merged with that of her husband? The uncontested proof indicates Appellant's mother, Tina, purchased these insurance policies and paid the premiums for them. Under normal contractual circumstances, Tina would be considered the owner of the policies. Yet, State Farm representatives unilaterally chose to list the "insured" as "Bratcher, Don & Tina L," conducting a credit check only on Don. Why not Tina? Is her credit irrelevant and insignificant? In fact, Tina was the only one between the two with actual employment. Does she have no independent identity? Nevertheless, due to the most random of circumstances, State Farm contends that because Tina, not Don, resided with Appellant in a home owned jointly by Tina and Don, their daughter–Appellant–is excluded from coverage solely because Don is the first-named insured. Thus, presumably, if Don were residing with Appellant instead of Tina, she would be covered by the policies in question. Such certainly smacks of the sex discrimination of a bygone era. Why else would State Farm choose a man as first-named insured over his wife who actually purchased the insurance policies herein and who paid all of the premiums for the policies? State Farm should not be allowed to benefit from such action.

BRIEFS FOR APPELLANT:

Sarah Chervenak
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEES:

Richard W. Edwards
Louisville, Kentucky